No. 2-09-0029    Filed: 4-28-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS FITCH, VIRGINIA WEST, HEATHER HAIBT, and THOMAS MICHAEL FITCH, as Beneficiaries of the Victoria R. Fitch Trust Dated February 3, 1987, as Amended and Restated October 13, 2004, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 07--CH--108 |
| McDERMOTT, WILL AND EMERY, LLP, DIETRICH AND DIETRICH, LLC, JOSEPH DIETRICH, JOHN DIETRICH, and HARRIS BANK, N.A., | ) ) ) ) ) | |
| | ) ) | Honorable Maureen P. McIntyre, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Thomas Fitch, Virginia West, Heather Haibt, and Thomas Michael Fitch, as beneficiaries of the Victoria R. Fitch Trust dated February 3, 1987, as amended and restated October 13, 2004, appeal the dismissal of several of their claims against defendants, McDermott, Will & Emery, LLP, Dietrich & Dietrich, LLC, Joseph Dietrich, John Dietrich, and Harris Bank, N.A., for the alleged mishandling of the estate plan of Victoria R. Fitch. We affirm.

I. BACKGROUND

The following general facts are derived from the various pleadings. On May 19, 2005, Victoria died, and her will was admitted to probate on July 8, 2005, making the last day to contest the will January 8, 2006. Also in July 2005, the estate published notice that any claims against the estate had to be filed by January 16, 2006. Prior to May 19, 2005, Victoria hired defendant law firm McDermott, Will & Emery (hereafter McDermott) to handle her estate plan. McDermott, with the assistance of defendant accounting firm Dietrich & Dietrich (hereafter Dietrich), prepared the Victoria R. Fitch Trust and Victoria's will. Around the same time, defendants Joseph Dietrich and John Dietrich (hereafter the Dietrichs), both certified public accountants, provided financial and accounting services for estate planning purposes to Victoria and her husband, plaintiff Thomas Fitch. Joseph had been providing accounting and financial services for the Fitch family for over 20 years. McDermott also represented Victoria's husband and her son, Thomas Michael (hereafter Michael), in preparing their estate planning documents. After Victoria's death, Dietrich and the Dietrichs (hereafter the Dietrich defendants) retained McDermott to represent Joseph and Harris Bank as co-executors and co-trustees of Victoria's will and trust. The Fitch family assets were valued in the tens of millions of dollars.

Pursuant to the terms of Victoria's will and trust, upon her death, the trust established and funded the following four trusts: (1) farm preservation trust; (2) family trust; (3) GST exempt trust; and (4) primary marital trust. Joseph and Harris Bank were designated co-trustees of the farm preservation trust, the GST exempt trust, and the primary marital trust. In the will, Victoria exercised her limited testamentary power of appointment over certain trusts by appointing all property to the co-trustees, Joseph and Harris Bank. A series of "appointive trusts" was also created for Victoria's children, and Joseph and Harris Bank were also co-trustees of those trusts. These "appointive trusts"

were created for Victoria's children: plaintiffs Virginia West, Heather Haibt, and Michael. Joseph and Harris Bank were also designated co-executors of Victoria's will. In addition to his role as co-executor and co-trustee, Joseph was also appointed as "adviser" under the trust document so that he could direct and control all investments held in the trusts and as corporate trustee "remover" so that he could remove and replace any corporate trustee or co-trustee.

Thomas was the beneficiary of the primary marital trust and the GST exempt trust. Virginia, Heather, and Michael were contingent remainder beneficiaries of the farm preservation trust, the GST exempt trust, the primary marital trust, and the appointive trusts of their respective siblings. They each were also the beneficiaries of the appointive trusts created for them individually.

The farm preservation trust was created for the benefit of Michael for 15 years. The trustees (Joseph and Harris Bank) were directed to allocate $3 million to this trust upon Victoria's death. The trustees had discretion to make distributions to Michael for his support, maintenance, and health. At the end of the 15-year term, the farm preservation trust was to divide into separate trusts for Victoria's children.

The GST exempt trust and the primary marital trust were created for the benefit of Thomas for his lifetime. The trust provided that Thomas receive all of the income of the two trusts and that the trustees had discretion to distribute principal monies for his support, maintenance, and health. Upon Thomas's death, the trust was to divide into separate trusts for Victoria's children.

Other involved entities include Cardwell Farms, LP, a limited partnership created February 28, 2003, pursuant to the advice of McDermott and the Dietrich defendants. The general partner of Cardwell Farms, LP, was Fitch Farm Management, LLC. The Fitch Farm, LLC, was also created February 28, 2003, upon the advice of McDermott and the Dietrich defendants. Victoria and Michael

were the initial members of The Fitch Farm, LLC. The limited partners of Cardwell Farms were Victoria, as trustee of the Victoria R. Fitch Trust, and Michael. The purpose of Cardwell Farms, LP, was to acquire, own, and manage property. At the time of Victoria's death, Cardwell Farms, LP, owned the 103-acre Fitch family farm located on Oak Knoll Road in Barrington Hills.

According to the complaint, had Victoria not been advised by the Dietrich defendants and McDermott to exercise a limited power of appointment, the assets in the trusts would have passed directly to her children and not been under the control of the trustees. Initially, plaintiffs took issue with gifts totaling $1.1 million that went to Joseph and John Dietrich under the will and alleged that defendants unduly influenced Victoria in advising her on and preparing her estate plan and were negligent in failing to disclose conflicts of interest that were created after Victoria's death.

Plaintiffs filed an initial complaint on January 25, 2007. A series of motions to dismiss, amended pleadings, and additional motions to dismiss ensued. Plaintiffs stated in the amended pleadings that they were repleading all counts that had been dismissed with prejudice for purposes of appealing. On September 18, 2007, the trial court dismissed with prejudice counts I, II, and III of the complaint. On May 9, 2008, the trial court dismissed with prejudice counts IV and V of the first amended complaint. On December 11, 2008, the trial court dismissed with prejudice counts IV, V, VI, and VIII of the second amended complaint. The trial court included language in accord with Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), and plaintiffs timely appealed the dismissal of these named counts.

## II. ANALYSIS

A motion to dismiss under section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2008)) tests the legal sufficiency of a plaintiff's claim; a motion to dismiss under

section 2--619 of the Code (735 ILCS 5/2--619 (West 2008)) admits the legal sufficiency of a plaintiff's claim but asserts certain defects or defenses outside the pleading that defeat the claim. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 579 (2006). Our standard of review under either section is de novo. Solaia, 221 Ill. 2d at 579. When we review the legal sufficiency of a claim under section 2--615, we take as true all well-pleaded facts in the complaint and determine whether the allegations, construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 11-12 (2005). Using these guidelines, we review plaintiffs' claims on appeal.

A. The Original Complaint

Plaintiffs filed their initial complaint on January 25, 2007. Count I of the complaint requested that the court impose a constructive trust upon the monies received by the Dietrichs under Victoria's will because there was a presumption of undue influence. According to the allegations, Victoria relied heavily on Joseph's advice over the years. Joseph had been paid millions of dollars over the years for his services and was appointed as an "adviser" under the Victoria R. Fitch Trust to approve all investments held in the trusts. Victoria became increasingly reliant upon Joseph for his financial advice. McDermott and Joseph developed a close working relationship while working on the Fitch estate and understood that upon Victoria's death, Joseph would retain McDermott as legal counsel for the co-executors and co-trustees. Under Victoria's will, Joseph received $750,000 and his son, John, received $350,000. As co-executor of Victoria's will, Joseph authorized the payments to himself and John.

Count II of the complaint alleged a conspiracy by McDermott and the Dietrich defendants to unduly influence Victoria. According to this claim, approximately 20 years ago, the Dietrichs introduced McDermott to the Fitch family to provide the family with legal services. McDermott knew that Joseph was a long-time advisor to the Fitch family and that Victoria had great trust in him for her financial and personal matters. While McDermott drafted the estate plan for Victoria, the Dietrich defendants provided substantial input. McDermott knew that it had a financial interest in not only preparing the estate documents but acting as attorney for the co-executors and co-trustees upon Victoria's death. McDermott conspired with the Dietrich defendants to include the $1.1 million gifts to Joseph and John in the will. McDermott's acts in drafting the will were done pursuant to and in furtherance of the common scheme employed by the Dietrich defendants and McDermott to unduly influence Victoria in matters related to estate planning.

Count III of the complaint alleged that McDermott aided and abetted the Dietrichs to unduly influence Victoria. Specifically, the claim alleged that McDermott aided and abetted the Dietrichs to overreach and exploit the relationship with Victoria by including the $1.1 million gifts to Joseph and John in the will.

On April 17, 2007, McDermott moved to dismiss, in relevant part, counts II and III, pursuant to section 2--619 of the Code. McDermott argued that the last day to contest Victoria's will was January 8, 2006, and the last day to file claims against her estate was January 16, 2006. Neither plaintiffs nor anyone else timely challenged the will or claimed against the estate. Over one year later, plaintiffs filed their complaint, including counts II and III, against McDermott. McDermott argued that the claims were barred by the statute of limitations under section 13--214.3(b) of the Code (735 ILCS 5/13--214.3(b) (West 2006)) and that the court lacked subject matter jurisdiction. Section

13--214.3(b) provides that an action against attorneys based on tort, contract, or otherwise that arises out of an act or omission in the performance of professional services must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought. 735 ILCS 5/13--214.3(b) (West 2006).

Section 13--214.3(d) (735 ILCS 5/13--214.3(d) (West 1994))[1] provides that when the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within two years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that two-year period. In those cases, the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will, whichever is later, as provided by the Probate Act of 1975 (755 ILCS 5/1--1 et seq. (West 2006)). According to McDermott, plaintiffs' claims alleged an injury after the death of its client, and Victoria's will was admitted to probate, but plaintiffs failed to file their claims within the time for filing claims against the estate or the time for contesting the validity of the will. Thus, the court lacked subject matter jurisdiction to hear the claims. Plaintiffs responded that McDermott fraudulently concealed its negligence and, accordingly, the exception to the limitations statute, found in section 13--215 of the Code (735 ILCS 5/13--215 (West 2006)), applied pursuant to DeLuna v. Burciaga, 223 Ill. 2d 49 (2006). Further, the court did have subject

---

[1]Although section 13--214.3(d) was repealed in 1995 by Public Act 89--7 (Pub. Act 89--7, eff. March 9, 1995), that act was held unconstitutional in Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997). Thus, the prior version of section 13--214.3(d) remains in effect. Petersen v. Wallach, 198 Ill. 2d 439, 443 n.1 (2002).

matter jurisdiction because plaintiffs were not contesting the will or making a claim against the estate. Rather, plaintiffs were maintaining an action for negligent preparation of the estate plan.

On May 2, 2007, the Dietrich defendants also moved to dismiss counts I, II, VI, and VII of the complaint. We need discuss only counts I and II as those are the only counts on appeal. Regarding counts I and II, the Dietrich defendants argued, as did McDermott, that the court lacked subject matter jurisdiction because the undue influence claims should have been filed within the time frame allowed to contest Victoria's will.

On September 18, 2007, the trial court heard the motions and entered an order dismissing counts I, II, and III with prejudice. At the hearing, the trial court noted that plaintiffs did not plead fraudulent concealment and, thus, section 13--214.3(d) was applicable. The court also noted that claims for undue influence should have been brought within the time to contest the will or make a claim against the estate.

Before getting to the merits of plaintiffs' argument on appeal, we address McDermott's attack on plaintiffs' notice of appeal.[2] McDermott argues that plaintiffs failed to include in their notice of appeal that they were appealing the dismissal of any counts pertaining to McDermott from the September 18, 2007, order. The notice of appeal stated that plaintiffs were appealing the "September

---

[2]McDermott raised the issue of plaintiffs' notice of appeal in a motion to strike filed with this court on May 29, 2009, and that motion was denied on June 19, 2009. We may revisit the issue of jurisdiction (Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC, 376 Ill. App. 3d 411, 419 n. 5 (2007)) and dismiss for lack of jurisdiction at any time (Fredman Brothers Furniture Co. v. Department of Revenue, 109 Ill. 2d 202, 215 (1985)). Therefore, we choose to address McDermott's argument on this point at this time.

18, 2007 Order granting defendant-appellees DIETRICH & DIETRICH, LLC, JOSEPH DIETRICH & JOHN DIETRICH's motion to dismiss Counts I and II of the Complaint with prejudice," which order was rendered appealable in the trial court's December 11, 2008, order. Plaintiffs later amended the notice of appeal with permission from this court to change the date of the trial court's Rule 304(a) order from December 11, 2008, to December 5, 2008. Plaintiffs concede in their reply brief that the notice of appeal failed to specify that it sought review of count II against McDermott and failed to include that it sought review of count III. But plaintiffs argue that the notice specified that it was seeking review of the September 18, 2007, order, which generally included these claims against McDermott.

Pursuant to Supreme Court Rule 303(b)(2) (210 Ill. 2d R. 303(b)(2)), when an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments that are not specified in or inferred from the notice of appeal. Neiman v. Economy Preferred Insurance Co., 357 Ill. App. 3d 786, 790 (2005). The exception to this rule is when a nonspecified judgment can be said to have been a " 'step in the procedural progression leading' " to the judgment specified in the notice of appeal. Neiman, 357 Ill. App. 3d at 790, quoting In re D.R., 354 Ill. App. 3d 468, 472 (2004). The purpose of the notice of appeal is to inform the prevailing party in the trial court that his opponent seeks review by a higher court. Nussbaum v. Kennedy, 267 Ill. App. 3d 325, 328 (1994). The notice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, advising the successful litigant of the nature of the appeal. Nussbaum, 267 Ill. App. 3d at 328. Where the deficiency is one of form rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of the notice

is not fatal. Nussbaum, 267 Ill. App. 3d at 328. This court liberally construes a notice of appeal absent prejudice to the litigants. Alpha Gamma Rho Alumni v. People ex rel. Boylan, 322 Ill. App. 3d 310, 313 (2001).

We agree with McDermott's argument that plaintiffs' notice of appeal failed to confer jurisdiction on this court to review counts II and III against it. In Alpha Gamma, the plaintiffs filed objections to certain real estate tax levies, against several units of local government in McLean County. Alpha Gamma, 322 Ill. App. 3d at 311-12. After the defendants won their motions for summary judgment, the plaintiffs filed a notice of appeal that stated that they were appealing from portions of the final order. Alpha Gamma, 322 Ill. App. 3d at 312. Certain defendants objected to the scope of the appellate court's review because the plaintiffs failed to perfect an appeal of any issue involving them and they would be prejudiced if forced to respond. Alpha Gamma, 322 Ill. App. 3d at 313. The appellate court agreed that it did not have jurisdiction to reverse and remand the "entire case" as the plaintiffs requested, because the plaintiffs' notice of appeal specified that they were appealing from the trial court's order that granted summary judgment in favor of the " 'following taxing districts on the issue of illegal accumulation of surplus funds.' " (Emphasis in original.) Alpha Gamma, 322 Ill. App. 3d at 314. Because the plaintiffs had indicated in their notice of appeal that they were appealing summary judgment as to only six of the several taxing districts, the notice did not fairly and accurately advise the remaining defendants that they sought relief against all 73 of them. Alpha Gamma, 322 Ill. App. 3d at 314. The court could not infer such intent from the notice of appeal even when liberally construed. Alpha Gamma, 322 Ill. App. 3d at 314. Therefore, the appellate court would review only the portion of the trial court's order that granted summary

judgment as to the six taxing district defendants listed in the plaintiffs' notice of appeal. Alpha Gamma, 322 Ill. App. 3d at 314.

We find the logic in Alpha Gamma's holding applicable here. In their notice of appeal, plaintiffs sought review of the September 18, 2007, order only insofar as it dismissed with prejudice counts I and II in favor of the Dietrich defendants. Later, plaintiffs moved to amend the notice of appeal but amended only the date that the trial court made its order appealable pursuant to Rule 304(a); they failed to amend the notice of appeal to include any additional portions of the order that they wanted to appeal. Even construing this notice of appeal liberally, we cannot say that McDermott was fairly and accurately advised that plaintiffs sought relief against the portion of the September 18, 2007, order that pertained to it. Thus, we find that our jurisdiction extends only to counts I and II of the original complaint and only as to the Dietrich defendants.

Moving on, plaintiffs argue that the trial court erred in dismissing counts I and II and finding that it did not have jurisdiction under section 8--1 of the Probate Act. They argue that the case defendants and the trial court relied upon, Robinson v. First State Bank of Monticello, 97 Ill. 2d 174 (1983), is distinguishable. In Robinson, the plaintiffs filed a three-count complaint against the defendant bank and the defendant advisor, who received a gift under the decedent's will. Robinson, 97 Ill. 2d at 176-77. The decedent's will, executed in 1974, and codicil, executed in 1976, were admitted to probate in 1978. Robinson, 97 Ill. 2d at 177. The decedent had previously executed a will in 1973, which left her estate to other beneficiaries. However, the later documents revoked the 1973 will. Robinson, 97 Ill. 2d at 177. After the 1974 will was admitted to probate, the beneficiaries under the 1973 will and the defendant advisor entered into a settlement agreement in which the 1973 beneficiaries agreed to refrain from contesting the will, in exchange for a $125,000 payment.

Robinson, 97 Ill. 2d at 177. In 1981, the plaintiffs filed a petition for a citation to discover information, asserting that the defendants owed them a duty to disclose the existence of a document purporting to revoke the decedent's first will and that the defendants used undue influence over the decedent in order for the decedent to gift most assets to the defendant advisor. Robinson, 97 Ill. 2d at 178.

The defendants moved to dismiss the action, arguing that the court had no jurisdiction because the petition amounted to a collateral attack on the validity of the will and the six months provided for will contests in the Probate Act had long expired. Robinson, 97 Ill. 2d at 178-79. The trial court granted the defendants' motion to dismiss, and later in 1981, the plaintiffs filed their three-count complaint, alleging breach of fiduciary duty by the defendant bank, breach of a duty by the defendant bank to exercise reasonable care to disclose revocation documents, and intentional and tortious interference by the defendant advisor when he induced the decedent to execute a will that made him the beneficiary of a substantial portion of her estate. Robinson, 97 Ill. 2d at 180-81. The defendants moved to dismiss, again asserting lack of jurisdiction because the time had expired for will contests. The appellate court agreed as to the claims against the bank but allowed the tortious interference claim to stand. Robinson, 97 Ill. 2d at 182. The supreme court dismissed all three claims, finding that all three claims depended upon the validity of the decedent's will. Robinson, 97 Ill. 2d at 182.

The admission of a will to probate is prerequisite to the right to contest the will in a direct proceeding. Robinson, 97 Ill. 2d at 183. If no direct proceeding is brought to contest the will within the six months prescribed by the Probate Act, the validity of the will is established for all purposes. 755 ILCS 5/8--1 (West 2008); Robinson, 97 Ill. 2d at 183. Since the decedent's will was not contested in a direct proceeding within the six-month statutorily prescribed time period, and such time

period was jurisdictional and not tolled by any other fact expressly provided for by the statute, the validity of the decedent's will had been established for all purposes. Robinson, 97 Ill. 2d at 183. The court then found that the plaintiffs' claims amounted to late attempts to contest the will by claiming undue influence under tortious-interference and breach-of-fiduciary-duty claims; thus, the trial court did not have jurisdiction to hear such claims beyond the six-month time period. Robinson, 97 Ill. 2d at 185.

Recently, the supreme court again addressed the six-month will contest time period in In re Estate of Ellis, 236 Ill. 2d 45 (2009), which plaintiffs moved this court for permission to file a supplemental brief to address. Plaintiffs argue that Ellis determined that the six-month limitations period in which a will may be contested does not apply to a tort claim for intentional interference with an expectancy of inheritance. We granted plaintiffs' motion to file a supplemental brief and allowed McDermott to file a supplemental response. In Ellis, the decedent executed a will in 1964 that designated Shriners Hospital as a contingent beneficiary of her entire estate. Ellis, 236 Ill. 2d at 47. In 1999, the decedent executed a new will that designated James Bauman, the pastor of the decedent's church, as sole beneficiary. Ellis, 236 Ill. 2d at 48. After the decedent died in 2003, the 1999 will was admitted into probate. Shriners Hospital first became aware of its interest in the 1964 will when that will was filed in the trial court in 2006 as part of a separate will contest brought by several of the decedent's heirs. Ellis, 236 Ill. 2d at 48. Shriners Hospital then filed a complaint that pleaded two counts contesting the validity of the will on grounds of undue influence and a third count alleging the tort of intentional interference with the expectancy of inheritance. The trial court dismissed the complaint, and the appellate court affirmed the dismissal of the intentional-interference count. Ellis, 236 Ill. 2d at 49.

The supreme court reversed the dismissal of the intentional-interference count, explaining that the claim did not contest the validity of the will but rather was a personal action directed at an individual tortfeasor. Ellis, 236 Ill. 2d at 51. The supreme court acknowledged that there could be some overlap of evidence with a will contest proceeding in establishing the distinct elements of the intentional interference tort: (1) the existence of an expectancy; (2) the defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages. Ellis, 236 Ill. 2d at 52. A remedy for such a tort may include a constructive trust, an equitable lien, or a monetary judgment. Ellis, 236 Ill. 2d at 52. Thus, the supreme court reasoned that a tort claim for intentional interference with an expectancy was not a petition to contest the validity of the will under the plain language of section 8--1 of the Probate Act. Ellis, 236 Ill. 2d at 53. However, in its holding, the supreme court distinguished its facts from those of Robinson and stated that, unlike the plaintiffs in Robinson, Shriners Hospital did not know of its interest in the 1964 will until after the six-month time period expired to contest the will. The court explained that its holding in Robinson "was limited to not recognizing the tort action where plaintiffs ha[d] an opportunity to contest a probated will but [chose] not to do so, and subsequently enter[ed] into an agreement to take no further court action." Ellis, 236 Ill. 2d at 54. Shriners Hospital did not choose to forgo an opportunity to contest the probated will, and it never had that opportunity. Ellis, 236 Ill. 2d at 54-55.

Further, the court noted that a will contest proceeding would not have provided Shriners Hospital sufficient relief, because it would not have extended to the inter vivos transfers of property that were alleged in its claim that Bauman unduly influenced the decedent to transfer property to him

before her death. Ellis, 236 Ill. 2d at 56. The court finally emphasized that its holding "applie[d] to the particular parties under the circumstances of [its] case and [did] not extend to a plaintiff who fails to bring a tort claim within the period for filing a will contest, where the will contest remedy was available." Ellis, 236 Ill. 2d at 56-57.

Plaintiffs go to great lengths to distinguish their facts from those of Robinson but we see no difference. We further find Ellis distinguishable. We first note that count I sought imposition of a constructive trust, which is a remedy, not a cause of action.[3] On the face of the complaint, it is obvious that in count I, plaintiffs sought to invalidate the gifts to Joseph and John on grounds of undue influence, which was a claim that could have been raised in a proceeding to contest the will just as the Robinson court pointed out to the plaintiffs in that case. Similarly, in count II, plaintiffs directly pleaded conspiracy to unduly influence Victoria. The obvious factual difference between this case and Robinson and Ellis is that here plaintiffs did not plead tortious interference but rather attempted to state a claim of undue influence. Even if tortious interference had been pleaded, unlike Shriners Hospital in Ellis, plaintiffs knew of the will when it was admitted into probate, as they were

_____

[3]Plaintiffs mistakenly rely on Neurauter v. Reiner, 117 Ill. App. 2d 141 (1969), for their proposition that a constructive trust is appropriate where the plaintiffs' claim is not directed at the estate. In Neurauter, however, the plaintiffs sought imposition of a constructive trust over property that the defendants held by virtue of an oral agreement among the plaintiffs, the decedent, and the defendants because one of the defendants allegedly improperly transferred the property into joint tenancy with her husband. Neurauter, 117 Ill. App. 2d at 145-48. Here, the Dietrichs possessed the $1.1 million pursuant to Victoria's will. The Dietrichs' possession of the money would be improper only if the will was invalid.

all heirs in some manner, and there was no reason that the gifts to Joseph and John could not have been objected to in a will contest proceeding. Further unlike in Ellis, there are no allegations of any inter vivos gifts that could not have been remedied in a will contest proceeding.

Additionally, we find the public policy reasoning in Robinson applicable to the facts of this case. The supreme court stated that the obvious purpose of section 8--1 of the Probate Act was to limit the time that a will may be questioned, to create stability in the administration of estates. Robinson, 97 Ill. 2d at 185. As in Robinson, plaintiffs in this case knew of the will's provisions at the time of Victoria's death and could have contested the provisions that gifted monies to the Dietrichs. Plaintiffs chose not to do so. As in Robinson, if we were to allow plaintiffs to maintain their undue influence claims, we would be giving them a "second bite of the apple and defeating the purpose of the exclusivity of a will contest under section 8--1." Robinson, 97 Ill. 2d at 185. Since no proceeding was raised to contest the will on grounds of undue influence (or any other grounds) when plaintiffs had the opportunity during the six-month time period provided by section 8--1, the validity of the will was established for all purposes. Plaintiffs may not now circumvent section 8--1 to attack the validity of the will with undue influence claims filed long after the six-month time period.

We also reject plaintiffs' reliance on In re Estate of Jeziorski, 162 Ill. App. 3d 1057, 1062-63 (1987), for their proposition that if an adequate remedy cannot be procured through probate proceedings, the Probate Act does not preempt any tort rights that a decedent's heirs may have. Jeziorski held that the plaintiffs, who filed their will contest claim within the six-month statutory time period, were also allowed to raise a tort claim in that probate proceeding. Jeziorski, 162 Ill. App. 3d at 1062-63. Here, plaintiffs did not plead their claims in a proper will contest proceeding in probate as the plaintiffs in Jeziorski did and, thus, Jeziorski is inapplicable to the facts of this case.

Accordingly, the trial court properly dismissed counts I and II under section 2--619 of the Code, pursuant to section 8--1 of the Probate Act and the supreme court's holding in Robinson.

### B. First Amended Complaint

On October 29, 2007, plaintiffs filed their first amended complaint. In count IV, Michael claimed that McDermott was negligent in representing his legal interests. According to this claim, Victoria informed McDermott that she wanted Michael to receive the family farm on Oak Knoll Road. The farm had been put into Cardwell Farms, LP, pursuant to McDermott's advice. The Victoria R. Fitch Trust, however, did not give Cardwell Farms, LP, to Michael at any point in time. Rather, as drafted, the trust provided that Michael had an option to purchase Cardwell Farms, LP. The primary marital trust had an 82.08% limited partnership interest in Cardwell Farms, LP, and thus Michael could acquire the family farm only by individually purchasing the limited partnership shares from the primary marital trust. The family farm property was valued at $6,690,000 in May 2005.

The claim alleged that the manner in which McDermott drafted Victoria's estate documents thwarted her desire to directly transfer Cardwell Farms, LP, to Michael. Michael was an intended third-party beneficiary of the attorney-client relationship between Victoria and McDermott. However, Michael was also a client of McDermott, as he was receiving prenuptial and estate planning legal advice from the firm as well. After Victoria's death, McDermott breached its duty of loyalty to Michael by failing to advise him that the estate plan created for Victoria deprived him of Cardwell Farms, LP. McDermott also failed to disclose its negligence and the negligence of the Dietrich defendants to Michael, in order to avoid civil liability.

Further, after Victoria's death, McDermott continued to represent Joseph as co-executor and co-trustee while simultaneously representing Michael and advising Michael regarding the

administration of Victoria's estate. McDermott, at all times, failed to advise Michael of its conflict due to the competing and adverse interests between Michael, as potential purchaser of Cardwell Farms, LP, and Joseph and Harris Bank as trustees for the seller.

The claim alleged that McDermott breached its duties to Michael by negligently (1) failing to advise him of the conflict of interest in representing the co-executors and co-trustees and Michael in relation to Cardwell Farms, LP; (2) failing to advise Michael that it negligently created an estate plan that did not adequately provide him a viable method to acquire Cardwell Farms, LP; and (3) failing to advise him that it negligently prepared an estate plan that did not adequately provide him a viable method to operate Cardwell Farms, LP. Because of these negligent omissions, Michael claimed, he was deprived of Victoria's testamentary objective.

In count V, Thomas alleged that McDermott was negligent when it failed to create an estate plan for Victoria that minimized death taxes and provided for his care and support in a manner that was consistent with his accustomed lifestyle. According to this claim, McDermott's complex estate plan caused the estate to incur significant and unnecessary immediate and future federal and state tax obligations and adversely impacted the assets and income that would have otherwise been available for distribution to Thomas. Thomas complained that the Victoria R. Fitch Trust created and funded the farm preservation trust with money that should have been allocated to the primary marital trust. Because of the failure to allocate to the primary marital trust the $3 million that went to the farm preservation trust, the marital trust was deprived of the opportunity to take the marital deduction, and $2.5 million in federal and state taxes had to be paid by the marital trust.

Thomas alleged that McDermott breached its duties to him by failing to the do the following: (1) advise him that it negligently created an estate plan that caused the estate to incur unnecessary

current and possibly future federal and state tax obligations; (2) advise him that the Dietrich defendants negligently created an estate plan that did not minimize tax obligations; (3) advise him that it and/or the Dietrich defendants negligently prepared an estate plan that created irreconcilable conflicts of interest between him and his children; (4) advise him that the estate plan did not carry out Victoria's objectives; (5) have him participate in his wife's estate planning process or advise him that his interests might be adversely affected and that, because the plan created family conflicts of interest, McDermott could no longer represent him; (6) advise Victoria of the estate tax consequences, advise her of the conflicts of interest the plan created among her husband and children, and sufficiently advise her of the advantages and disadvantages and alternative plans available; and (7) advise him of the statute of limitations for legal malpractice claims involving estate-related matters, which would have allowed him to pursue a claim within the time frame.

On November 21, 2007, McDermott moved to dismiss counts IV and V of plaintiffs' first amended complaint pursuant to sections 2--615 and 2--619 of the Code. McDermott noted that plaintiffs were given an opportunity to replead these two counts because they had failed to plead fraudulent concealment in their initial complaint. McDermott argued that plaintiffs failed to plead fraudulent concealment in amended counts IV and V and instead alleged, in an effort to avoid the effect of section 13--214.3(d), that it committed legal malpractice after Victoria's death. McDermott argued that plaintiffs' new allegations should fail under section 2--615 of the Code because the first amended complaint did not allege that Michael or Thomas ever engaged McDermott to advise either of them on Victoria's estate plan. Further, it argued that the claims should fail under section 2--619 of the Code because the claims were barred under section 13--214.3(d).

On May 9, 2008, the trial court orally ruled upon the motions to dismiss the various counts of plaintiffs' first amended complaint. As to counts IV and V, the court stated that McDermott was not hired to represent Michael or Thomas in connection with Victoria's estate and that there were no allegations that anything that McDermott did or did not do in representing either of them related to the work done for Victoria. There were also no allegations that work done by McDermott for Michael affected or was affected by the work done for Victoria. The work done for Michael in no way prevented him from purchasing Cardwell Farms, LP, per the estate plan, and there were no allegations that gave rise to a duty of McDermott to disclose to Michael information that it had regarding Victoria's estate. No allegations gave rise to a duty of McDermott to advise Michael or Thomas of any claims against itself or the Dietrich defendants with respect to work done for Victoria. Accordingly, the court dismissed counts IV and V with prejudice, under section 2--615.

Count IV of the first amended complaint was somewhat confusing as it essentially alleged legal malpractice under two theories: (1) Michael was injured as an intended third-party beneficiary of the attorney-client relationship between Victoria and McDermott; and (2) Michael was injured by McDermott's breach of its duties arising from its attorney-client relationship with him. We first examine Michael's claim as the intended third-party beneficiary of the McDermott-Victoria attorney-client relationship. On appeal, plaintiffs argue that Michael adequately stated a negligence claim against McDermott because Victoria advised McDermott of her desire for Michael to receive the Fitch family farm upon her death, and McDermott failed to draft an estate plan that achieved this. McDermott argues that plaintiffs forfeited the argument that Michael was an intended third-party beneficiary by failing to develop that argument in the trial court. Because the argument was raised in the trial court, we decline to deem the argument forfeited. McDermott next argues that, because

Michael's alleged injury did not occur before Victoria's death, the claim was time-barred by section 13--214.3(d) of the Code. Thus, McDermott argues that the claim was properly dismissed under section 2--619.

Section 13--214.3(d) of the Code provides that when any action for damages based on tort, contract, or otherwise against an attorney arising out of an act or omission in the performance of professional services does not accrue until the death of the client, the action may be commenced within two years after the date of the client's death unless letters of office are issued or the client's will is admitted to probate within that two-year period. 735 ILCS 5/13--214.3(d) (West 1994). If the will is admitted to probate or letters of office are issued, an action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will, whichever is later, as provided by the Probate Act of 1975. 735 ILCS 5/13--214.3(d) (West 1994). The lone inquiry made by a court when determining whether section 13--214.3(d) is applicable is whether the injury caused by the malpractice occurred upon the death of the client. Wackrow v. Niemi, 231 Ill. 2d 418, 424 (2008), citing Petersen v. Wallach, 198 Ill. 2d 439, 446 (2002).

In Wackrow, the supreme court applied section 13--214.3(d) to the plaintiff's claim of legal malpractice in the drafting of the decedent's trust document. Wackrow, 231 Ill. 2d at 425. The plaintiff claimed that the trust failed to grant her the decedent's residence because the attorney failed to perform a title search to determine that the residence was owned by another trust and not the decedent. Wackrow, 231 Ill. 2d at 420-21. The supreme court held that it was clear that the injury did not occur until the decedent's death because the decedent could have revoked the trust prior to his death. Wackrow, 231 Ill. 2d at 425. Likewise, in this case, Victoria could have revoked or amended her will to provide for Michael to receive the Fitch family farm outright. Until her death,

Michael was not injured. Because Michael's claim of legal malpractice did not accrue until Victoria died, section 13--214.3(d) applies. Victoria's will was admitted to probate on July 8, 2005, and thus Michael's right to file his claim expired on January 16, 2006. Therefore, count IV of the first amended complaint, regarding Michael's claim as an intended third-party beneficiary of the McDermott-Victoria attorney-client relationship, was properly dismissed under section 2--619 of the Code. While it appears that the trial court treated count IV as alleging one claim rather than two separate theories and dismissed this count pursuant to section 2--615, we may affirm on any ground evident in the record. Brandon v. Bonell, 368 Ill. App. 3d 492, 507-08 (2006).

We next move on to Michael's claim in count IV that McDermott breached its duty to exercise reasonable care, which it owed to him directly. To prevail on a legal malpractice claim, the plaintiff must plead and prove: (1) that the defendant attorney owed the plaintiff client a duty of due care arising from the attorney-client relationship; (2) that the defendant breached that duty; and (3) that as a proximate result, the plaintiff suffered injury. Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill. 2d 218, 225-26 (2006). Plaintiffs rely on Keef v. Widuch, 321 Ill. App. 3d 571 (2001), in support of their proposition that the scope of McDermott's representation of Michael created a duty to advise him that it was negligent in preparing Victoria's trust and that it had a conflict of interest in representing both him and the trustees of Victoria's trust and the executors of her will. McDermott counters that count IV failed to establish that McDermott owed Michael a duty to advise him about Victoria's estate plan. McDermott was hired by Michael to advise him regarding his estate planning, not Victoria's. Further, McDermott argues that it had no duty to advise Michael of its own alleged negligence. On this issue, the trial court dismissed the count pursuant to section 2--615, finding that the claim did not allege a duty to advise Michael about Victoria's plan. We agree.

In Keef, the plaintiff hired the defendant attorneys to represent him in a workers' compensation matter and sued the attorneys when they failed to advise him of potential third-party actions against a manufacturer of the product that caused his injury. Keef, 321 Ill. App. 3d at 574. The defendant attorneys moved to dismiss the plaintiff's complaint, arguing that the scope of their representation extended only to the workers' compensation claim; thus, they had no duty to advise the plaintiff regarding product liability claims. The plaintiff submitted an affidavit from another attorney, who attested that the standard of care applicable to workers' compensation lawyers required them to advise clients about potential third-party claims or advise clients to seek advice from other lawyers regarding potential third-party claims. Keef, 321 Ill. App. 3d at 575-76.

The attorney's duty to his client is not always limited to the terms of the attorney-client contract. Keef, 321 Ill. App. 3d at 577. For example, independent of any written attorney-client contract, an attorney has duties to exercise competence, provide advice to the client about legal remedies, and inform the client about the scope of the attorney's representation. Keef, 321 Ill. App. 3d at 577. Whether a duty is owed is a question of law. Keef, 321 Ill. App. 3d at 577. The relevant factors in determining the existence of a duty include: (1) reasonable foreseeability; (2) the likelihood of injury; (3) the magnitude of the burden on the defendant in guarding against the injury; and (4) the consequences of placing that burden on the defendant. Keef, 321 Ill. App. 3d at 577.

In Keef, the court determined that it was reasonably foreseeable that the typical injured worker would be uninformed about the possibility of a third-party tort action. Keef, 321 Ill. App. 3d at 578. Any workers' compensation attorney would know or should know about the possibility of a third-party action since such actions are referenced in the statute governing worker's compensation claims. The burden of requiring the attorney to advise the client about such potential actions would

be minimal. Further, the failure to advise the client about the potential for third-party claims results in a client who is not informed about the limited scope of the attorney's representation. Keef, 321 Ill. App. 3d at 578. Thus, the Keef court concluded that "in the unique circumstances of [its] case, workers' compensation attorneys should have a duty to clients to advise them about the possibility of third-party actions and either to investigate such claims or to advise the clients to consult other counsel about such claims." Keef, 321 Ill. App. 3d at 579.

We agree with McDermott that Keef is distinguishable from this case because the alleged negligent act in Keef was not the failure to advise the client of the attorney's negligence but the attorney's failure to advise the client about potential third-party actions and the statute of limitations for those actions. Here, Michael claimed that McDermott failed to advise him that it negligently drafted the estate plan so that he would have to purchase the family farm property. No facts were alleged that Victoria's will and trust did not embody her testamentary intent. Moreover, Michael's claim was that McDermott owed him a duty to advise him of its own alleged legal malpractice, and on this point plaintiffs do not cite to a relevant case. McDermott, however, cites to a California case on point, Expansion Pointe Properties Ltd. Partnership v. Procopio, Cory, Hargraves & Savitch, LLP, 152 Cal. App. 4th 42, 55, 61 Cal. Rptr. 3d 166, 176 (2007), which stated that the plaintiffs failed to cite to any authority "suggesting an attorney has a duty to discuss--either at the inception of the attorney-client relationship or later in the representation--the various types of recovery a client may obtain in a potential malpractice action against him or her." We similarly find no case that would require an attorney to affirmatively advise his client of his negligence and the statute of limitations for suing him. Regardless of whether an attorney has a duty to affirmatively inform a client of his malpractice, plaintiffs have failed to plead any facts to support that the Michael-McDermott attorney-

client relationship gave rise to a duty to advise Michael about any work performed for Victoria. Michael was receiving advice from McDermott regarding his estate planning, not Victoria's. Thus, McDermott would not have had a duty to advise Michael, a nonclient as to this matter, about its performance of services for Victoria. Finally, Michael's claim that McDermott failed to advise him of the conflict of interest between him as a potential buyer of the family farm and Joseph and Harris Bank as trustees for the seller was unfounded. The claim did not allege that Michael ever sought McDermott's counsel as a buyer of the property, only that he was a potential buyer. Actually, the complaint did not allege that Michael even had the means to purchase the farm. Accordingly, we find that count IV regarding McDermott's relationship with Michael was properly dismissed under section 2--615 because the allegations failed to state that a duty existed.

For the same reasons that we affirm the dismissal of Michael's legal malpractice claim regarding his direct attorney-client relationship with McDermott, we affirm the dismissal of Thomas's claims in count V. Thomas, like Michael, alleged that McDermott failed to create or advise him that it did not create an estate plan that minimized taxes and provided for Thomas's care and support. Thomas further alleged that McDermott failed to advise him of the statute of limitations for legal malpractice claims that involved estate-related matters. Like Michael, Thomas failed to allege that McDermott owed a duty to disclose its own negligence to a client and, more importantly, failed to allege that McDermott owed him a duty to advise him regarding Victoria's estate plan, as he alleged only that he employed McDermott to assist with his estate plan. Accordingly, count V was properly dismissed under section 2--615 of the Code.

C. Second Amended Complaint

On July 17, 2008, plaintiffs filed their second amended complaint. In count IV of the second amended complaint, Virginia, as beneficiary of her appointive trust, alleged that Joseph breached his fiduciary duties. Joseph, as a long-time financial advisor to Victoria, owed her a fiduciary duty and was prohibited from elevating his financial interests over Victoria's interests. According to this claim, Joseph was engaged to help prepare an estate plan for Victoria that would provide for the care and support of her husband and her children. The estate plan was to be prepared to minimize tax obligations as well. Joseph failed to create an estate plan consistent with these goals and instead created a plan that designated Joseph co-executor, co-trustee, and lifetime advisor with the capacity to appoint his son for life as successor advisor and the capacity to remove and replace corporate trustees. The plan damaged the primary marital trust by failing to include the $3 million that went to the farm preservation trust, depriving it of the marital deduction and incurring $2.5 million in federal and state taxes that the primary marital trust was required to pay. The plan further caused the primary marital trust to become an 82.08% owner in Cardwell Farms, LP, which was an asset that was nonincome producing. The plan also was created such that the trusts were to continue to pay exorbitant and unnecessary fees to Joseph and other fiduciaries. The plan created acrimony and disharmony in the Fitch family and required each family member to retain independent counsel to advise him or her of his or her rights and liabilities under the plan.

In counts V and VI of the second amended complaint, Heather and Michael, as beneficiaries of their appointive trusts, alleged that Joseph breached his fiduciary duties in the same manner as alleged in count IV.

In count VIII, Thomas, as beneficiary of the primary marital trust, alleged that Harris Bank was negligent in that it should have known that the estate plan created by the Dietrich defendants and

McDermott was negligent because it allocated $3 million to the farm preservation trust instead of the primary marital trust and made the primary marital trust an 82.08% owner in Cardwell Farms, LP. Harris Bank, according to the claim, breached its fiduciary duties and duty to exercise ordinary care by failing to investigate and pursue professional negligence claims against McDermott. As a result of Harris Bank's negligence, the statute of limitations to pursue a claim against McDermott expired and deprived the primary marital trust and its beneficiary of the right to pursue the claim.

The third round of motions to dismiss followed plaintiffs' filing of their second amended complaint. The Dietrich defendants moved to dismiss, in relevant part, counts IV, V, and VI, on September 25, 2008. First, they argued that the counts were subject to dismissal under section 2--615 of the Code because Victoria's trust clearly expressed an intent to fund the farm preservation trust with $3 million and, therefore, plaintiffs' claim that Victoria's intent was not carried out by her estate plan was invalid. The Dietrich defendants also argued that the counts should be dismissed under section 2--615 because plaintiffs failed to sufficiently plead that Joseph owed a fiduciary duty to Victoria and because plaintiffs did not have standing given that no case permitted a trust beneficiary to sue the settlor's financial advisor for breach of fiduciary duty. Further, the Dietrich defendants argued that plaintiffs' claims did not allege any facts that established Joseph's actions as a financial advisor regarding the creation of the trust documents; plaintiffs only vaguely stated that Joseph assisted in the preparation of the estate plan. The claims also did not sufficiently establish negligence, because the claims took issue only with Victoria's placement of $3 million in the farm preservation trust and the placement of Cardwell Farms, LP, into the primary marital trust. The Dietrich defendants argued that plaintiffs failed to plead how these actions violated Victoria's testamentary intent or how any defendant deviated from the duties owed to Victoria.

On September 8, 2008, Harris Bank moved to dismiss count VIII of plaintiffs' second amended complaint. Harris Bank argued that count VIII should be dismissed pursuant to section 2--615 because plaintiffs failed to plead that Harris Bank was negligent or that it breached its fiduciary duty. Harris Bank argued that plaintiffs failed to plead that the provisions in Victoria's will and trust were negligent or that they did not reflect her intent. Further, there were no allegations contained in the claim that Harris Bank knew or should have known that McDermott failed to implement Victoria's intent, if McDermott actually did fail to do so. In fact, Harris Bank argued that the tax obligations of the estate plan posited by plaintiffs would have been higher by $2.4 million.

On December 11, 2008, the trial court heard the various motions to dismiss. Regarding Harris Bank's motion to dismiss, the trial court agreed that plaintiffs' claim consisted only of conclusions and lacked any factual basis. It dismissed count VIII with prejudice. Regarding counts IV, V, and VI, the trial court agreed with the Dietrich defendants' oral argument that the appointive trust beneficiaries did not have standing to allege damage to the primary marital trust. The trial court dismissed those counts with prejudice as to Joseph.

We first address counts IV, V, and VI against Joseph. On appeal, plaintiffs argue that the trial court erred in finding they did not have standing. We find plaintiffs' arguments on this issue wholly unfounded. First, plaintiffs argue that they had standing because a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and good faith. While we do not dispute this proposition of law, plaintiffs' claims did not allege that Joseph breached his duty as trustee of any of the trusts. Rather, plaintiffs alleged that Joseph breached his duties as financial advisor to Victoria when he assisted in her estate planning process.

The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing a lawsuit. Glisson v. City of Marion, 188 Ill. 2d 211, 221 (1999). The doctrine ensures that issues are raised by those with a real interest in the outcome of the controversy. Glisson, 188 Ill. 2d at 221. Standing requires some injury in fact to a legally cognizable interest. Glisson, 188 Ill. 2d at 221. The claimed injury may be actual or threatened, and it must be: (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. Glisson, 188 Ill. 2d at 221.

Here, plaintiffs' claims related to financial advisory services provided to Victoria before her death and before the trusts were ever funded. Plaintiffs did not have a legally cognizable interest in any controversy about the services the Dietrich defendants allegedly provided to Victoria. Further, while plaintiffs argue that contingent beneficiaries may have standing to sue the trustee, the suit must be related to preserving or protecting their future interest in the trust res. See Giagnorio v. Emmett C. Torkelson Trust, 292 Ill. App. 3d 318, 323 (1997). Here, plaintiffs' claims did not relate to Joseph as trustee breaching any fiduciary duties that related to the trust res. Accordingly, we find that the trial court did not err in dismissing counts IV, V, and VI with prejudice for lack of standing, pursuant to section 2--619 of the Code.

Even if plaintiffs had standing to pursue a claim relating to the professional services Joseph provided to Victoria, plaintiffs' allegations included only conclusory statements that Joseph "prepared" Victoria's estate plan. In the complaint, McDermott was alleged to have actually prepared Victoria's estate documents, with the advice of Joseph. There were no specific allegations relating to what advice Joseph provided to Victoria or McDermott or whether Victoria did not agree to the terms contained in the documents. Conclusory statements of fact are insufficient to survive a section

2--615 motion to dismiss. <u>Pooh-Bah Enterprises, Inc. v. County of Cook</u>, 232 Ill. 2d 463, 473 (2009). Thus, counts IV, V, and VI could also have been dismissed for failure to state a claim upon which relief may be granted, under section 2--615.

Finally, on appeal, plaintiffs argue that count VIII was dismissed in error because they sufficiently stated a negligence claim against Harris Bank. Plaintiffs' brief on this issue is merely a regurgitation of the allegations in count VIII. Harris Bank argues that plaintiffs' complaint posited only conclusory assertions of negligence on the part of McDermott. There were no facts to support plaintiffs' claim that the trust was negligently drafted, and no facts to support their claim that Harris Bank had any knowledge that the trust was drafted against Victoria's intent.

As stated, a cause of action should not be dismissed pursuant to section 2--615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. <u>Pooh-Bah</u>, 232 Ill. 2d at 473. On such a motion, all well-pleaded facts and all reasonable inferences that may be drawn from those facts are taken as true. <u>Pooh-Bah</u>, 232 Ill. 2d at 473. However, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. <u>Pooh-Bah</u>, 232 Ill. 2d at 473. Here, count VIII was devoid of any facts supporting plaintiffs' claim that Harris Bank breached the fiduciary duties it owed the beneficiaries of the primary marital trust. There were no facts supporting plaintiffs' allegation that Harris Bank knew or should have known that the Dietrich defendants and McDermott negligently drafted Victoria's will or trust. Count VIII was also devoid of any facts to support plaintiffs' claim that Harris Bank failed to investigate and pursue any potential claims the primary marital trust may have had against McDermott. Plaintiffs' conclusions of law were insufficient to sustain a cause of action against Harris Bank. Accordingly, count VIII was properly dismissed with prejudice pursuant to section 2--615.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

Affirmed.

ZENOFF, P.J., and McLAREN, J., concur.