FIFTH DIVISION
March 30, 2007

No. 1-05-2313

|  |  |  |
|---|---|---|
| BELL LEASING BROKERAGE, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) ) | Circuit Court of Cook County |
| v. | ) ) | |
| ROGER AUTO SERVICE, INC., | ) ) | Honorable Alexander P. White, |
| Defendant-Appellant | ) | Judge Presiding. |
| | ) | |
| (Waldermar Rodriguez and Carmen Rodriguez, | ) ) | |
| Defendants). | ) | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Bell Leasing Brokerage, LLC (Bell), brought an action sounding in detinue and conversion against Roger Auto Service, Inc. (Roger's Towing), alleging that Roger's Towing wrongfully towed and retained a vehicle in which Bell had a perfected security interest, and sued Waldermar Rodriguez and Carmen Rodriguez for breach of contract. Following a bench trial, the circuit court ordered Roger's Towing to return the vehicle to Bell and pay $10,000 damages. On appeal, Roger's Towing contends that (1) the trial court's finding that the vehicle was not abandoned was contrary to the manifest weight of the evidence; (2) the trial court's imposition of a money judgment based partly

on a finding that Roger's Towing did not comply with a default order was contrary to the manifest weight of the evidence; (3) the trial court erred in finding that Bell was not required to present law enforcement with proof of its right to possession, that Bell was not required to pay Roger's Towing for incurred towing and storage charges, and that Roger's Towing was required to respond to a phone call from Bell's president and a letter from Bell's attorney; and (4) the trial court's award of damages was contrary to the manifest weight of the evidence and constituted an abuse of discretion. Waldermar Rodriguez and Carmen Rodriguez are not parties to this appeal.

## BACKGROUND

On February 24, 2003, Waldermar Rodriguez and Carmen Rodriguez purchased a van from Bell. Pursuant to the retail installment contract they executed, the Rodriguezes granted a security interest in the van to Bell. Bell perfected its security interest in the van by delivering the original certificate of title to the Illinois Secretary of State.

At trial, Officer Paul Norrington testified that on January 2, 2004, the van was parked on a public roadway in Franklin Park, Illinois. He stated that the van did not have a license plate or municipal vehicle sticker, and was missing one rear window wiper blade. He agreed that overall, the van was "in pretty good condition." Officer Norrington testified that he placed a sticker on the van indicating it was abandoned. Eight days later, on January 10, 2004, Officer Norrington observed the van in the same location and the same condition. He concluded that the van was deserted based on "[t]he amount of dirt and snow that had accumulated around the vehicle, the dirt that had deposited itself on the vehicle." Officer Norrington notified his dispatchers about the van, which was then towed away by Roger's Towing.

Bell's president, Robert Doppelt, testified that on January 28, 2004, Bell received a letter from the Cook County sheriff regarding the van being towed. The letter, which was admitted into evidence, was titled "Owner Notification" and indicated that the van had been towed and was being stored at Roger's Towing. According to Doppelt's testimony, the Rodriguezes were current in their payments to Bell at that time. The next day, Doppelt called Roger's Towing and related that Bell was the lienholder on the van. When the person on the phone reported that Bell would have to pay $1,000 to get the van back, Doppelt said, "[H]ave your boss call me." Doppelt did not receive a call, so he contacted Bell's legal firm. Doppelt testified that the van was never delivered to Bell.

On February 2, 2004, Bell's counsel sent a letter to Roger's Towing seeking to make arrangements for the return of the van and stating that Bell would be willing to pay $175 for the cost of towing and storage. Roger Tomaras, the president of Roger's Towing, testified that he did not respond to the letter, either orally or in writing. When asked his reason for not responding, he stated, "Well, I'm not in a custom of having people tell me what they're going to pay for what I do, my services."

On February 19, 2004, Bell filed suit. Bell's complaint originally listed the president of Roger's Towing, Roger Tomaras, as party defendant. Tomaras acknowledged that he was personally served with process on February 20, 2004. He testified that he did not appear in court in response to the summons because, "I was trying to contact people to find out what I had to do. Police, lawyers, that type of thing." Tomaras denied that he forgot about the court hearing and denied that he overlooked it.

1-05-2313

On February 26, 2004, the trial court entered a default judgment against Tomaras based on his failure to appear or answer. The order compelled Tomaras to "deliver the Vehicle to Plaintiff's principal place of business at 2296 N. Rand Road, Palatine, Illinois, on or before March 4, 2004." Tomaras testified that he did not comply with the default order. When asked at trial why he did not deliver the van to Bell, Tomaras answered as follows:

> "I wanted to retain an attorney to see what I had to do here. This was not, I believe, in the company's name, it was in my personal deal. I was just totally confused and I wasn't getting response [*sic*] of what this was all about. I'm just not used to all this. This is -- I don't do this. I got called to tow a car. We tow the car, we have a bill of towing and storage, then I'm told to take the car and bring it somewhere else. I wanted to get confirmation of what this was all about."

On March 19, 2004, Tomaras filed a motion to vacate the default order, and on April 16, 2004, the trial court entered an order vacating the default judgment and substituting Roger's Towing as party defendant.

At trial, Officer Robert Rudow, an investigator with the Cook County sheriff's police department who had been working in the sheriff's automobile department for five years, testified that he was familiar with the condition of the van at issue and was familiar generally with values of automobiles. Each month, he generated a report indicating the value of all the vehicles that were recovered stolen. Officer Rudow testified that he saw the van at Roger's Towing on April 16, 2004,

4

and in his opinion, the market value of the van was approximately $6,000.

On April 13, 2005, the trial court entered an order finding that Bell was entitled to possession of the van when it was towed; that Roger's Towing failed to prove the van was abandoned; that even if the van was abandoned, Bell was nevertheless entitled to immediate possession on January 29, 2004; that Roger's Towing had an implied duty to respond to the letter sent by Bell's counsel; and that the failure of Roger's Towing to comply with the terms of the default judgment "constitutes another basis for imposing liability for its actions and conduct in connection with the vehicle." The trial court concluded that Roger's Towing's continued possession of the van after January 29, 2004, was wrongful, and that because Roger's Towing did not comply with the provisions of the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq*. (West 2004)), it was not entitled to the limited immunity conferred by the Code. The court ordered Roger's Towing to deliver the van to Bell on or before April 15, 2005, and to pay $10,000 in damages.

## ANALYSIS

On appeal, Roger's Towing contends that (1) the trial court's finding that the van was not abandoned was contrary to the manifest weight of the evidence; (2) the trial court's imposition of a money judgment based partly on a finding that Roger's Towing did not comply with a default order was contrary to the manifest weight of the evidence; (3) the trial court erred in finding that Bell was not required to present law enforcement with proof of its right to possession, that Bell was not required to pay Roger's Towing for incurred towing and storage charges, and that Roger's Towing was required to respond to Bell's phone call and letter; and (4) the trial court's award of damages was contrary to the manifest weight of the evidence and constituted an abuse of discretion.

5

### I. Jurisdiction

Before addressing the contentions raised by Roger's Towing, we must consider Bell's assertion that we lack jurisdiction to address this appeal because the notice of appeal was filed 78 days after the entry of the final judgment from which Roger's Towing is appealing.

On April 13, 2005, the same day the trial court entered judgment, Roger's Towing filed a motion to reconsider, requesting "leave to supplement this motion with a transcript of the report of proceedings and a memorandum of law setting forth in detail [Roger's Towing's] argument in support of [the] motion." On May 4, 2005, the trial court entered an order granting Roger's Towing until May 18, 2005, to file its memorandum of law and setting a hearing on the motion for June 29, 2005. On June 28, 2005, Roger's Towing filed an emergency motion to withdraw the motion to reconsider and to stay enforcement of the money judgment. On June 29, 2005, the trial court ordered that the motion to reconsider was withdrawn and that enforcement of the money judgment would be stayed. The next day, June 30, 2005, Roger's Towing filed its notice of appeal from the trial court's judgment of April 13, 2005.

Supreme Court Rule 303(a)(1), which governs the timing of filing the notice of appeal, provides as follows:

> "Except as provided in paragraph (b) below [regarding amendments to the notice of appeal], the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury

6

case, within 30 days after the entry of the order disposing of the last

pending postjudgment motion."  210 Ill. 2d R. 303(a)(1).

Bell argues that the agreed order providing for the voluntary withdrawal of the motion to reconsider does not constitute an "order disposing of the last pending post-judgment motion" as contemplated in Rule 303(a)(1), and that therefore, Roger's Towing was untimely in the filing of its notice of appeal.  However, Bell acknowledges in its brief that in its research, it could not locate any authority directly on point.

We find informative *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870 (2001).  *Pokora*, involved the following timeline of events:

• December 15, 1999: the trial court granted summary judgment in the plaintiff's favor.

• March 24, 2000: following a hearing, the trial court entered judgment on damages, including language that the order was final and appealable.

• June 21, 2000: the trial court denied the defendant's May 25, 2000, motion for sanctions.

• July 24, 2000: the defendant filed a motion to reconsider its request for sanctions.

• August 17, 2000: the defendant moved to withdraw its motion to reconsider.

• September 7, 2000: the trial court entered an agreed order granting the defendant's motion to withdraw the motion to reconsider.

• September 22, 2000: the defendant filed a notice of appeal from the trial court's orders of December 15, 1999, March 24, 2000, and June 21, 2000.

The *Pokora* court commented that the notice of appeal "indicated that the last order became final on September 7, 2000, when the trial court disposed of defendant's motion to reconsider."

7

*Pokora*, 322 Ill. App. 3d at 875. Without discussing the issue of appellate jurisdiction, the *Pokora* court proceeded to address the merits of the appeal. In keeping with *Pokora*, which involved circumstances strikingly similar to those presented in the instant case, we too will proceed to consider the contentions raised on appeal.

## II. Abandoned Vehicle

Roger's Towing first contends that the trial court's finding that the van was not abandoned was contrary to the manifest weight of the evidence. Roger's Towing notes that the only witness to testify concerning the location and physical condition of the van was Officer Norrington. Roger's Towing argues that according to Officer Norrington's testimony, the van appeared to be deserted given the amount of dirt and snow that accumulated on and around it, and appeared not to have been moved for seven consecutive days given that it was in the same location and same physical condition from January 2, 2004, until January 10, 2004.

The Code defines an "abandoned vehicle" as "any vehicle in a state of disrepair rendering the vehicle incapable of being driven in its condition or any vehicle that has not been moved or used for 7 consecutive days or more and is apparently deserted." 625 ILCS 5/1-101.05 (West 2004). In general, property is considered to be abandoned when the owner, intending to relinquish all rights to the property, leaves it free to be appropriated by any other person. *Michael v. First Chicago Corp.*, 139 Ill. App. 3d 374, 382 (1985). A finding of abandonment is a factual determination which will not be disturbed on appeal unless it is against the manifest weight of the evidence. *People ex rel. Illinois Historic Preservation Agency v. Zych*, 186 Ill. 2d 267, 278 (1999). Where there are different ways to view the evidence, or alternative inferences to be drawn from it, the view of the

trier of fact must be accepted so as long as it is reasonable. *Zych*, 186 Ill. 2d at 278; see also *City of Chicago v. Old Colony Partners, L.P.*, 364 Ill. App. 3d 806, 812 (2006) (a trial court's factual determinations are contrary to the manifest weight of the evidence only if all reasonable people would find the opposite conclusion to be clearly evident). It is not the function of a reviewing court to reweigh evidence.

At trial, Officer Norrington testified that the van was dirty, did not have a license plate or municipal vehicle sticker, and was missing one rear window wiper blade, but he agreed that the van was "in pretty good condition." Officer Norrington concluded that the van had been deserted based upon the "amount of dirt and snow that had accumulated around the vehicle, the dirt that had deposited itself on the vehicle." Despite Officer Norrington's testimony, the trial court found Roger's Towing failed to prove the van was abandoned as defined in the Code, since it did not present competent evidence establishing that the van had not been moved or used for seven consecutive days and was apparently deserted. We cannot say that the conclusion regarding apparent desertion was unreasonable. As pointed out by Bell in its brief, most vehicles parked on public roadways in the Chicago metropolitan area in the middle of January are covered with dirt and snow. Accumulations of dirt and snow on a vehicle are not so conclusive of desertion that all reasonable people would find a conclusion opposite of the trial court's to be clearly evident. Accordingly, we find that the trial court's ruling on the issue of abandonment was not against the manifest weight of the evidence.

### III. Compliance with Default Order

Roger's Towing's next contention is that the trial court's imposition of the $10,000 money

judgment based partly on a finding that Roger's Towing did not comply with a default order was contrary to the manifest weight of the evidence. Roger's Towing notes that the default judgment was entered against Roger L. Tomaras, who was dismissed as a defendant in the case, and argues that, therefore, the default judgment was of no force and effect with respect to Roger's Towing, which was not substituted as a party to the case until after the default order was vacated.

The portion of the trial court's order to which Roger's Towing objects is as follows:

"The Court further finds that Roger's Towing's failure to deliver the vehicle to Plaintiff's principal place of business by March 4, 2004, as ordered by this Court on February 26, 2004, constitutes another basis for imposing liability for its actions and conduct in connection with the vehicle. If Roger's Towing objected to the entry of this Court's February 26, 2004, default judgment, it could have appeared on that date instead of admittedly 'overlooking it' or filed an appropriate motion prior to March 4, 2004. It did neither."

When read in context with the trial court's entire order, it becomes clear that the trial court based its decision to impose a $10,000 money judgment on factors in addition to Roger's Towing's failure to deliver the van to Bell's principal place of business by March 4, 2004. Before reaching the paragraph quoted above, the trial court found that Bell had a perfected security interest in the van and was entitled to possession of the van when it was towed; that an employee of Roger's Towing told Bell it would have to pay in excess of $1,000 to recover the van; that Bell's counsel sent a letter to Roger's Towing on February 2, 2004, seeking to arrange for recovery of the van; that counsel's

letter was ignored; that Tomaras, the president of Roger's Towing, was personally served with process but "overlooked" the initial appearance date; that Roger's Towing had failed to prove the van was abandoned; that even if the van was abandoned, Bell was entitled to immediate possession on January 29, 2004, because Roger's Towing had no right to demand a payment in excess of $1,000 when the maximum rate it could have charged as of that date was $325; and that Roger's Towing had an implied duty to respond to Bell's counsel's letter.

Further, following the paragraph quoted above, the trial court found that because Roger's Towing did not comply with all provisions of the Code, it was not entitled to the limited immunity offered by the Code; and that Roger's Towing's continued possession of the van after January 29, 2004, was wrongful. The trial court concluded, "Damages in detinue, based upon Roger's Towing's wrongful detention of the Vehicle, and the estimated fair market value of the Vehicle as of January 22, 2004, is $10,000."

Not every error committed by the trial court in a civil case leads to reversal. *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 550 (2005). If the outcome of a case would not have been different absent the error, a judgment or decree will not be disturbed. *Slepian*, 358 Ill. App. 3d at 550; see also *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 153-54 (2005) (concluding that the trial court's findings of fact were against the manifest weight of the evidence, but affirming the ultimate judgment because the error was harmless). Moreover, we may affirm the trial court's judgment on any basis in the record, regardless of the trial court's reasoning. *Slepian*, 358 Ill. App. 3d at 550.

Given the trial court's thorough explanation of its multiple reasons for entering a money

judgment in this case, we conclude that any error in considering Roger's Towing's noncompliance with the vacated default judgment was harmless. The trial court's ultimate determination regarding damages would not have been any different had it not considered the default judgment. Roger's Towing's argument fails.

### IV. Interpretation of Code Provisions

Roger's Towing next contends that the trial court erred in construing section 4-207 of the Code (625 ILCS 5/4-207 (West 2004)) to relieve Bell of its duties to present law enforcement with proof of its right to possession and to pay Roger's Towing for incurred towing and storage charges. Section 4-207, titled "Reclaimed vehicles; expenses," provides as follows:

> "(a) Any time before a vehicle is sold at public sale or disposed of as provided in Section 4-208, the owner, lienholder or other person legally entitled to its possession may reclaim the vehicle by presenting to the law enforcement agency having custody of the vehicle proof of ownership or proof of the right to possession of the vehicle.
>
> (b) No vehicle shall be released to the owner, lienholder, or other person under this Section until all towing, storage, and processing charges have been paid." 625 ILCS 5/4-207 (West 2004).

We have reviewed the trial court's order and cannot locate where the trial court allegedly construed section 4-207 "to relieve the plaintiff lienholder of its duties to present to the law enforcement agency having custody of the subject motor vehicle proof of the plaintiff's right to

possession of the vehicle, and to pay the towing service all incurred towing and storage charges." Our review of the trial court's order reveals that the only times the trial court touched upon section 4-207 were (1) when the trial court recited that section 4-207 "provides that any person entitled to possession of a vehicle may reclaim a towed vehicle by (a) presenting proof of ownership or right to possession, and (b) paying all towing, storage and processing charges," and (2) when the trial court stated that it "reject[ed] Roger's Towing's position that Plaintiff was required to appear at its business premises and tender the amount it claimed was due for the towing and storage charges associated with the vehicle without first having been told the correct amount due for such charges." We cannot find that the trial court construed section 4-207 in the manner alleged by Roger's Towing, much less find that the trial court erred in doing so.

Roger's Towing further contends that the trial court erred in finding that it "was required by the Motor Vehicle Code to return the phone call of Plaintiff's president and to respond to the demand letter of Plaintiff's attorney in order for Defendant to preserve its rights as a towing service authorized to tow an abandoned vehicle" because "such duties do not appear in the Motor Vehicle Code." Again, we have reviewed the trial court's order and find no holding that Roger's Towing was required to return Doppelt's phone call. With regard to the demand letter, the trial court held, "The Court further finds that Roger's Towing had an implied duty under the Code to respond either orally or in writing to Plaintiff's counsel's February 2, 2004, letter." The letter provided as follows:

> "This office represents Bell Leasing Brokerage, LLC, the first
>
> lienholder of the above-referenced vehicle (the 'Vehicle'). You are
>
> wrongfully detaining the Vehicle since it is my client's understanding

that it was not abandoned by its owner when it was towed to your business premises. To avoid litigation, my client would agree to pay you $175 for the reasonable cost of the tow ($100) and storage ($75). If arrangements are not made by February 5, 2004, for redelivery for the Vehicle to my client, I have been authorized to pursue all available remedies, including filing a detinue action in the Circuit Court of Cook County, Illinois."

The president of Roger's Towing, Tomaras, testified at trial that he did not respond to the letter sent by Bell's counsel because he was "not in a custom of having people tell me what they're going to pay for what I do, my services."

Section 4-207 of the Code, titled "Reclaimed vehicles; expenses," deals with the process of reclaiming vehicles that have been towed as abandoned vehicles. 625 ILCS 5/4-207 (West 2004). As noted above, section 4-207 provides as follows:

"(a) Any time before a vehicle is sold at public sale or disposed of as provided in Section 4-208, the owner, lienholder or other person legally entitled to its possession may reclaim the vehicle by presenting to the law enforcement agency having custody of the vehicle proof of ownership or proof of the right to possession of the vehicle.

(b) No vehicle shall be released to the owner, lienholder, or other person under this Section until all towing, storage, and

processing charges have been paid." 625 ILCS 5/4-207 (West 2004).

Given the requirement of section 4-207(b) that a lienholder must pay all towing charges before a vehicle may be released to it, we find it reasonable to imply a duty on a towing company to respond to inquiries about or challenges to the amount of those charges. Additionally, we agree with Bell that the trial court's determination that a towing company has an implied duty to respond to a letter from a lienholder stating that a vehicle which was towed due to alleged abandonment was not actually abandoned is reasonable under the facts and circumstances of this case. Accordingly, we reject Roger's Towing's contention that the trial court erred in finding it had a duty to respond to the letter sent by Bell's counsel.

## V. Damages

The trial court awarded Bell $10,000 as "[d]amages in detinue, based upon Roger's Towing's wrongful detention of the Vehicle, and the estimated fair market value of the Vehicle as of January 22, 2004." Roger's Towing contends that the trial court's award of damages was contrary to the manifest weight of the evidence and constituted an abuse of discretion. Aside from setting forth the standard of review, Roger's Towing's entire argument on this issue is as follows:

> "The damage award in this case should be reversed. First, no
> competent evidence concerning the fair market value of the vehicle
> was presented. Second, the vehicle was delivered to Plaintiff before
> June 29, 2005, pursuant to the judgment of April 13, 2005. Third, the
> Defendant should have been found to be immune from civil liability
> pursuant to 625 ILCS 5/4-213. Fourth, the award of punitive

15

damages based on Defendant's actions as revealed by the evidence presented to the trial court does not warrant punitive damages. The award of punitive damages in this case is not supported by the record and constitutes an abuse of discretion. Accordingly, the award of damages should be reversed, because no reasonable person would award punitive damages under the facts of this case."

As an initial matter, we address Roger's Towing's argument that it should have been found to be immune from civil liability. Section 4-213(a) of the Code provides in relevant part as follows:

"[A] towing service owner, operator, or employee shall not be held to answer or be liable for damages in any action brought by the registered owner, former registered owner, or his legal representative, lienholder or any other person legally entitled to the possession of a vehicle when the vehicle was processed and sold or disposed of as provided by this Chapter." 625 ILCS 5/4-213 (West 2004).

The trial court determined that Roger's Towing was not entitled to immunity under this section because it "did not comply with each of the provisions of the Code." We agree with this conclusion because the van was not an "abandoned vehicle" as defined by section 1-101.05 (625 ILCS 5/1-101.05 (West 2004)); and Roger's Towing improperly demanded payment of an amount in excess of $875, which the parties agreed at trial was the maximum amount Roger's Towing was authorized to demand for towing and storage services under the Code (see 625 ILCS 5/4-203(g), 214(b) (West 2004)). Accordingly, we reject the argument that Roger's Towing should have been

found to be immune from liability.

In general, "the measure of damages in a detinue action is the rental value of the chattel during the period of the wrongful detention." *L & LC Trucking Co. v. Jack Freeman Trucking Co.*, 36 Ill. App. 3d 186, 189 (1976). "[W]hether the plaintiff actually rented a replacement [is irrelevant], since damages are awarded as compensation to the owner of the chattel for being wrongfully deprived of [its] use and enjoyment." *L & LC Trucking Co.*, 36 Ill. App. 3d at 189. "In essence, the defendant is regarded as having rented the *** chattel from the plaintiff for the period of the wrongful detention." *L & LC Trucking Co.*, 36 Ill. App. 3d at 189. A trial court's award of compensatory damages will be reversed if it is against the manifest weight of the evidence. *Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1037-38 (2002).

In the instant case, evidence of the value of the van was provided by Officer Robert Rudow, who testified at trial that the van's fair market value in April 2004 was approximately $6,000. Evidence of the rental value of the van was provided by the installment contract signed by Waldermar Rodriguez and Carmen Rodriguez, which indicated their monthly installment payments were $373.61. This monthly amount, multiplied over the 14 months that Roger's Towing held the van, reflects a total rental value of $5,230.54. As noted above, "the measure of [compensatory] damages in a detinue action is the rental value of the chattel during the period of the wrongful detention." *L & LC Trucking Co.*, 36 Ill. App. 3d at 189. Accordingly, an award of compensatory damages of $5,230.54 in the instant case is not against the manifest weight of the evidence.

The remaining $4,769.46 of the trial court's damage award apparently reflects punitive damages. When reviewing a trial court's decision to award punitive damages, we take a three-step

approach, considering: "(1) whether punitive damages are available for the particular cause of action, using a *de novo* standard; (2) whether, under a manifest weight of the evidence standard, the defendant acted fraudulently, maliciously[,] or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages." *Caparos v. Morton*, 364 Ill. App. 3d 159, 178 (2006).

In the instant case, Bell sued Roger's Towing under theories of detinue and conversion. The tort of conversion supports an award of punitive damages. *Turner v. Firstar Bank, N.A.*, 363 Ill. App. 3d 1150, 1160 (2006). Withholding chattel until a plaintiff pays storage fees constitutes a conversion where the defendant does not have a valid possessory lien. *Glaser v. Kazak*, 173 Ill. App. 3d 108, 115 (1988). Here, Roger's Towing did not have a valid possessory lien on the van because it failed to adhere to all the provisions of the Code when it demanded an unlawful amount of money for the recovery of the van. Accordingly, a finding of conversion was appropriate, and punitive damages are available in this case.

The evidence at trial established that Roger's Towing, through its employee, misrepresented the amount of money required to recover the van. In addition, the president of Roger's Towing, Tomaras, testified that he did not respond to the letter sent by Bell's attorney because he was "not in a custom of having people tell me what they're going to pay for what I do, my services"; was served with a summons relating to the suit but did not file an appearance or responsive pleading because he "was trying to contact people to find out what I had to do," not because he forgot about or overlooked the summons; and received a copy of the default judgment but did not comply with it while it was in effect because "I wanted to retain an attorney to see what I had to do here."

18

Punitive damages for conversion are proper where "the defendant acts willfully or with such gross negligence to indicate a wanton disregard of the rights of others." *Turner*, 363 Ill. App. 3d at 1160. In light of the circumstances of the instant case, it was not against the manifest weight of the evidence to conclude that Roger's Towing acted willfully and with wanton disregard of Bell's rights, and that Roger's Towing acted in a manner that warrants punitive damages.

Finally, "[a] trial court does not abuse its discretion [in assessing punitive damages] unless no reasonable person could assume its view." *Caparos*, 364 Ill. App. 3d at 180. Punitive damages serve dual purposes: "retribution against the wrongdoer and deterrence of similar conduct by that party and by others in general." *Caparos*, 364 Ill. App. 3d at 180. We cannot say that a punitive damage award of $4,769.46 in this case does not serve those purposes. We find no abuse of discretion.

Based on the rental value of the van and the three-step test for punitive damages set out above, we affirm the trial court's damages award.

CONCLUSION

For the reasons explained above, we affirm the judgment of the circuit court.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.