2020 IL App (5th) 190350-U

NO. 5-19-0350

NOTICE
Decision filed 08/19/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFK DISTRICT

_____

| | | |
|---|---|---|
| LIEUTENANT COLONEL ROBERT WILSON and ELIZABETH MOLLINGER-WILSON, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees and Cross-Appellants, | ) ) | |
| v. | ) ) | No. 12-L-1152 |
| THOMAS W. BURKART, | ) ) ) | Honorable Clarence W. Harrison II, |
| Defendant-Appellant and Cross-Appellee. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: Because attorney failed to sufficiently assert claim to funds he had deposited into his personal bank account pursuant to an order determined to be void in 2012, the circuit court properly entered summary judgment on client's post-2012 conversion claim against attorney. The circuit court's denial of client's claims for consequential damages, attorney fees, and punitive damages was not abuse of discretion.

¶ 2   Twenty years ago, the defendant, Thomas W. Burkart, acted as legal counsel for

the plaintiffs, Lieutenant Colonel Robert Wilson and Elizabeth Mollinger-Wilson (the

Wilsons), in litigation stemming from the purchase of Illinois real estate. This appeal

arises from the circuit court's order granting summary judgment in favor of the Wilsons

1

on a conversation action against Burkart but denying the Wilsons' request for consequential damages, attorney fees, and punitive damages. For the following reasons, we hereby affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4    As noted previously (*Illinois State Bar Ass'n Mutual Insurance Co. v. Burkart*, 2015 IL App (4th) 140936-U, ¶ 5), "[t]he procedural history of this protracted litigation is convoluted," and we therefore set forth only as much information as is relevant for purposes of this appeal.

¶ 5    In 1998, Burkart represented the Wilsons in a cause of action, which involved professional negligence and misrepresentations during a real estate purchase, against Paul R. Lauschke, Margi Moore, and Lauschke & Associates (the Lauschke defendants). Burkart's fee arrangement with the Wilsons ostensibly provided that in consideration of legal services, the Wilsons agreed to pay Burkart the following from the gross amount of recovery: 33.3% in the event of no trial, 40% in the event of a trial, and 50% in the event of garnishment, supplemental proceedings, or appeal and that if the applicable percentage fee was insufficient to cover Burkart's hourly fee, the Wilsons would pay the difference, not to exceed $15,000.

¶ 6    After a jury trial on the Wilsons' action against the Lauschke defendants, the jury returned a verdict awarding the Wilsons $30,000. In 2003, this court entered an order affirming in part and reversing in part the circuit court's judgment on the jury's verdict. *Wilson v. Moore*, No. 5-01-0422 (2003) (*Wilson I*) (unpublished order under Supreme Court Rule 23). This court reversed that portion of the circuit court's judgment in favor of

the Lauschke defendants based on the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)), and this court remanded the case for further proceedings. On remand, the circuit court entered judgment in favor of the Lauschke defendants on the Consumer Fraud and Deceptive Business Practices Act. Accordingly, on September 30, 2004, this court addressed a second appeal brought by the Wilsons and affirmed the circuit court's judgment. *Wilson v. Lauschke*, No. 5-03-0469 (2004) (*Wilson II*) (unpublished order under Supreme Court Rule 23).

¶ 7    On March 9, 2005, this court issued the mandate based on the 2004 decision in *Wilson II*. On April 22, 2005, the Lauschke defendants submitted a check to Burkart and the Wilsons for $41,613.70, which included the amount of the judgment plus interest from the judgment date. Over two months after the mandate had issued, on May 20, 2005, Burkart filed a motion to enforce and adjudicate an attorney's lien, pursuant to the Attorneys Lien Act (770 ILCS 5/1 *et seq.* (West 2004)), on the judgment proceeds. In this motion, Burkart also requested the court to adjudicate in his favor an equitable lien on the judgment proceeds. He sought $35,806.85 in attorney fees, which included 50% of the $41,613.70 judgment proceeds, plus $15,000. Burkart further alleged in the motion that the Wilsons had rejected his proposed distribution of the proceeds and refused to endorse the check submitted by the Lauschke defendants. The Wilsons responded to Burkart's lien motion by filing a counterclaim alleging Burkart had committed negligence and legal malpractice and had retained an excessive amount of attorney fees from the judgment proceeds. The Wilsons' counterclaim requested a judgment against Burkart in an amount in excess of $50,000. The circuit court acknowledged that the judgment against the

3

Lauschke defendants had been fully satisfied and ordered that the judgment proceeds be deposited into an escrow account with the Bank of Edwardsville.

¶ 8    Thereafter, on March 12, 2008, the circuit court entered summary judgment in favor of Burkart on the Wilsons' malpractice, breach of contract, and breach of fiduciary duty claims. On April 9, 2008, the circuit court entered an order holding, *inter alia*, that Burkart's attempted lien notice was ineffective to acquire a statutory attorney's lien against the proceeds of the jury verdict. The circuit court nevertheless entered judgment in Burkart's favor, finding he had acquired an equitable lien equal to 50% of the gross amount of the recovery.

¶ 9    On March 11, 2010, this court addressed the parties' third appeal (*Wilson v. Burkart*, No. 5-08-0180 (2010) (*Wilson III*) (unpublished order under Supreme Court Rule 23)) and affirmed the circuit court's April 9, 2008, order denying the enforcement of a statutory lien but finding an equitable lien in favor of Burkart. *Id.* On September 29, 2010, the Illinois Supreme Court denied the Wilsons' petition for leave to appeal. 237 Ill. 2d 593 (2010) (table). The Illinois Supreme Court issued its mandate to the Fifth District Appellate Court on November 3, 2010. On November 10, 2010, this court's mandate was filed in the circuit court.

¶ 10   On October 4, 2010, Burkart filed a motion to release the funds that had been deposited with the Bank of Edwardsville. On November 4, 2010, before this court issued its mandate affirming the judgment on appeal, the circuit court entered an order directing the Bank of Edwardsville to distribute the funds held in escrow, giving $20,806.85 to Burkart and the remaining funds to the Wilsons, and to close the account. On the same

4

day, Burkart took the order to the Bank of Edwardsville, which distributed $20,806.85 to Burkart, distributed the remaining funds to the Wilsons, and closed the account. On January 14, 2011, the circuit court denied the Wilsons' motion to reconsider its November 4, 2010, order. On February 11, 2011, the Wilsons filed a notice of appeal. *Wilson v. Lauschke*, 2012 IL App (5th) 110059-U (*Wilson IV*).

¶ 11   On February 21, 2012, the *Wilson IV* court addressed the Wilsons' fourth appeal and vacated the circuit court's April 9, 2008, order, wherein the circuit court had entered the equitable lien in Burkart's favor. The *Wilson IV* court held that the circuit court had lacked the authority to hear Burkart's equitable lien request, which was filed more than 30 days after final judgment in the underlying case. *Wilson IV*, 2012 IL App (5th) 110059-U. Accordingly, on May 29, 2012, the Wilsons filed in the circuit court a motion for relief from the vacated orders, seeking return of the $20,806.85 in Burkart's possession. On June 26, 2012, the circuit court entered an order, noting the appellate court mandate, noting Burkart's failure to appear, and granting the Wilsons "leave to file further petition." Accordingly, on July 26, 2012, in circuit court case number 12-L-1152, the Wilsons filed a petition for relief from the vacated orders. The Wilsons again sought return of the $20,806.85 in Burkart's possession, asserting that he had acquired no valid claim to the funds. The Wilsons also sought costs, attorney fees, post-judgment interest, punitive damages, and consequential damages.

¶ 12   Over three years later, on November 30, 2015, the Wilsons filed a fifth amended complaint against Burkart, alleging abuse of process, conversion, malicious prosecution, and miscellaneous remedy. In alleging conversion, the Wilsons asserted an absolute and

5

unconditional right to the immediate possession of the $20,806.85 withdrawn by Burkart in 2010 from the Bank of Edwardsville account. The Wilsons alleged that Burkart, without lawful authorization or legal right to the funds, assumed control, dominion, and ownership over the property. The Wilsons alleged that Burkart's withholding of the judgment proceeds was intentional, willful and wanton, oppressively calculated and performed for his personal interest and gain, and deprived them of their natural and due process rights. The Wilsons sought punitive damages, consequential damages, pre- and post-judgment interest, and attorney fees.

¶ 13    On February 25, 2016, the circuit court granted leave to allow Burkart's motion to dismiss the Wilsons' fourth amended complaint to stand against the Wilsons' fifth amended complaint. On December 4, 2013, Burkart had filed a motion to dismiss the Wilsons' fourth amended complaint. On the same date, Burkart had also filed his answer and affirmative defenses to the Wilsons' fourth amended complaint. Burkart had asserted as affirmative defenses that the circuit court had authorized the distribution of fees to him, that the fee agreement was fully enforceable, and that the Wilsons had voluntarily paid Burkart.

¶ 14    On March 31, 2016, Burkart filed his motion for summary judgment as to conversion, claiming that because the withdrawal of funds was pursuant to court order, it was privileged. On April 19, 2016, the circuit court entered an order for partial summary judgment on the Wilsons' conversion action, granting summary judgment in Burkart's favor as to the November 4, 2010, withdrawal of the funds, but denying summary judgment in his favor with regard to holding the funds after the appellate court's 2012

order vacating its prior orders. On June 10, 2016, the circuit court granted Burkart's motion to dismiss with regard to the Wilsons' actions involving abuse of process and malicious prosecution "on 2-619 grounds as precluded by law upon the facts alleged" and denied Burkart's motion to dismiss regarding equitable relief, finding the measure of damages remained a factual dispute.

¶ 15    On September 21, 2017, the circuit court entered an order certifying questions for appeal pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017). On appeal, this court noted that because the circuit court had entered its order authorizing the distribution of funds to Burkart prior to the filing of this court's mandate pursuant to *Wilson III*, the circuit court's November 4, 2010, order, entered when the court had no jurisdiction over the case, had no effect and was null and void. *Wilson v. Burkart*, 2018 IL App (5th) 170396-U, ¶ 20 (*Wilson V*); see also *People v. Chapman*, 2018 IL App (1st) 163045, ¶ 4 ("After the filing of a notice of appeal and prior to the filing of the appellate court's mandate, the circuit court lacks jurisdiction to enter any order of substance in the cause."). The *Wilson V* court held that because the order releasing the funds to Burkart was void, as was the order granting his request for an equitable lien, the circuit court should have ordered Burkart to return the funds pursuant to the Wilsons' May 29, 2012, motion attacking the void judgments. *Wilson V*, 2018 IL App (5th) 170396-U, ¶ 22; see also *Schak v. Blom*, 334 Ill. App. 3d 129, 134-35 (2002) (because turnover order was void, court properly ordered the return of the funds that had been turned over pursuant to the void order). The *Wilson V* court concluded that Burkart was precluded from retaining

7

the funds disbursed pursuant to void court orders because he had failed to assert a timely or sufficient claim to the funds. *Wilson V*, 2018 IL App (5th) 170396-U, ¶ 24.

¶ 16    On November 6, 2017, while the certified questions were pending appeal, Burkart filed a motion for summary judgment in the circuit court, raising the issue that any new claims in case number 12-L-1152 were barred by *res judicata*, as this court's decision in *Wilson IV* was without remand. On August 15, 2018, after Burkart's petition for rehearing on appeal in *Wilson V* was denied, the Wilsons filed in the circuit court their post-appeal motion to dismiss Burkart's summary judgment motion and vacate prior adverse orders, motion to comply with the appellate directions by entering summary judgment in the Wilsons' favor on the conversion count in their fifth amended complaint, or, in the alternate, petition for section 2-1401 relief (735 ILCS 5/2-1401 (West 2018)) for an award of damages and attorney fees pursuant to Rule 137 sanctions (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)).

¶ 17    On November 21, 2018, the Wilsons supplemented their summary judgment motion with damages. On March 4, 2019, the Wilsons sought an order granting summary judgment on their conversion action and requiring Burkart to return $20,806.85 to them. The Wilsons attached to their motion supporting exhibits and documentation showing damages to include $18,464.97 in consequential damages; $13,100 in attorney fees since 2014 (amended to add $500); and $20,806.85 in punitive damages. With respect to the consequential damages, the Wilsons attached a summary of attorney fees and litigation costs. The Wilsons also sought prejudgment interest of $11,549.03 plus $8747.73.

8

¶ 18   On June 17, 2019, Burkart filed a reply to the Wilsons' August 15, 2018, motion regarding conversion, a motion to dismiss the Wilsons' section 2-1401 petition, and a motion for the Wilsons to return $20,806.85. On July 17, 2019, the circuit court entered its order granting summary judgment in the Wilsons' favor. The circuit court found it undisputed that Burkart had endorsed the $20,806.85 cashier's check from the Bank of Edwardsville and deposited the funds in his personal account at the First National Bank of Staunton. The circuit court concluded that the Wilsons sufficiently showed that Burkart exercised control over their judgment proceeds in a manner inconsistent with their right of possession and that their right to the $20,806.85 was absolute and unconditional. The circuit court noted that Burkart had no ownership in the Wilsons' original cause of action, that Burkart had failed to establish lien rights to the judgment funds, and that Burkart had declined to seek a fee on a *quantum meruit* basis and had forfeited an equitable right to the judgment funds. The circuit court also held that Burkart's affirmative defenses, filed on December 4, 2013, were insufficient to create a genuine issue of material fact in order to prevent summary judgment in the Wilsons' favor. Accordingly, the circuit court granted summary judgment in the Wilsons' favor on their action for conversion, dismissed the Wilsons' remaining counts, and denied Burkart's issues as moot. The circuit court ordered Burkart to tender a certified check in the amount of $20,806.85 plus prejudgment interest in the amount of $19,937.52, made payable to the Wilsons within 30 days and denied the Wilsons' request for punitive damages and attorney fees.

9

¶ 19    On August 15, 2019, Burkart filed his notice of appeal from the order entered on July 17, 2019, and a motion for stay of judgment and approval of appeal bond. Burkart attached to his motion an appeal bond in the amount of $50,000, secured by a real property bond on his unencumbered property. On the same date, the circuit court approved Burkart's motion to stay with appeal bond. On August 22, 2019, the Wilsons filed a notice of cross-appeal from the July 17, 2019, judgment as to the denial of their request for consequential damages, punitive damages, and attorney fees and from the August 15, 2019, judgment granting Burkart's stay of judgment with appeal bond.

¶ 20                                    II. ANALYSIS

¶ 21    The Wilsons argue that Burkart's notice of appeal was insufficient to withstand scrutiny under the Illinois Supreme Court Rule 303(b)(2) principles. Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (notice of appeal shall specify judgment appealed from and relief sought from the reviewing court). The Wilsons argue that Burkart's notice "appeal[ing] to the Appellate Court of Illinois, Fifth District, from the order and judgment entered in the [c]ircuit [c]ourt of Madison County, in this case on July 17, 2019" failed to fairly and adequately inform the Wilsons of the nature of his appeal. The Wilsons argue that because Burkart's jurisdictional notice of appeal fails to comply with the Rule 303(b)(2) principles and is completely absent of any relief sought, this court lacks jurisdiction to consider Burkart's appeal.

¶ 22    "The purpose of the notice of appeal is to inform the prevailing party in the trial court that his opponent seeks review by a higher court." *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1014 (2010). "As such, Supreme Court Rule 303(b)

10

states that a notice of appeal 'shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court.' " *In re F.S.*, 347 Ill. App. 3d 55, 68 (2004) (quoting Ill. S. Ct. R. 303(b)). "The notice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, advising the successful litigant of the nature of the appeal." *Fitch*, 401 Ill. App. 3d at 1014. "Where the deficiency is one of form rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of the notice is not fatal." *Id.* "This court liberally construes a notice of appeal absent prejudice to the litigants." *Id.*

¶ 23    In this case, Burkart's notice revealed that he was appealing the circuit court's July 17, 2019, decision entering summary judgment in the Wilsons' favor. In the circuit court's July 17, 2019, order, the circuit court entered summary judgment in the Wilsons' favor on their conversion action and ordered Burkart to tender a certified check in the amount of $20,806.85, along with prejudgment interest in the amount of $19,937.52, made payable to the Wilsons, within 30 days of the order. The circuit court further denied the Wilsons' request for attorney fees and punitive damages. We reject the Wilsons' argument that Burkart failed to fairly and adequately inform them of the nature of his appeal.

¶ 24    On appeal, Burkart argues that the circuit court erred in entering judgment when it did not have jurisdiction over the proceedings. Burkart argues that this court's 2012 reversal without remand in *Wilson IV* (*Wilson v. Lauschke*, 2012 IL App (5th) 110059-U) combined with inactivity by the Wilsons "killed this case."

11

¶ 25    The Wilsons counter that after this court in 2012 found a want of jurisdiction to consider Burkart's lien petition in case 98-L-534, this court correctly exercised its authority to vacate the November 4, 2010, order rather than remand to the circuit court to do so. The Wilsons argue that because there was no jurisdiction to revive in the circuit court and there was no bank account under the circuit court's control, as it had been liquidated, a remand would have been futile. The Wilsons thus argue that whatever relief either they or Burkart sought would have to be sought in a new cause of action. The Wilsons nevertheless note that Burkart, an Illinois attorney with a fiduciary duty, needed no order to return the $20,806.85 that he took and failed to segregate on November 4, 2010.

¶ 26    In 2012, the *Wilson IV* court vacated the circuit court's April 9, 2008, order, which had entered the equitable lien in Burkart's favor. *Wilson v. Lauschke*, 2012 IL App (5th) 110059-U. Prior to the holding in *Wilson IV*, Burkart's claim to the funds, prematurely distributed by the circuit court, was viable pursuant to the circuit court's order entering an equitable lien, and therefore, the Wilsons' conversion claim was not ripe for adjudication. See *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933 (2009) (stating that a claim is ripe for adjudication when it is fit for judicial determination at that point in time). After this court's holding in *Wilson IV*, however, the Wilsons' conversion claim against Burkart became ripe for adjudication. See *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill. App. 3d 461, 473 (2007) ("Withholding chattel until a plaintiff pays storage fees constitutes a conversion where the defendant does not have a valid possessory lien."). Accordingly, in November 2015,

the Wilsons properly filed their conversion claim against Burkart. The Wilsons asserted that after this court's holding in *Wilson IV*, Burkart took unauthorized and wrongful assumption of control, dominion, or ownership over the Wilsons' personal property. Although the same parties were involved in the previous litigation regarding whether a lien attached to the judgment proceeds paid by the Lauschke defendants, the Wilsons properly alleged a new cause of action seeking new relief. See *Cleeland v. Gilbert*, 334 Ill. App. 3d 297, 302 (2002) (in response to argument that order confirming arbitration award was void because motion to compel arbitration was filed in same action that had been previously dismissed with prejudice, court held that motion to compel arbitration was a new cause of action seeking new relief, and placement of old case number was a ministerial function that had no impact on the cause of action or its outcome). The circuit court had jurisdiction to enter summary judgment in favor of the Wilsons on their conversion claim.

¶ 27    Moreover, the circuit court properly entered summary judgment in favor of the Wilsons on their conversion claim. "Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time." *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1131 (2004). " 'The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.' " *Id.* (quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App. 3d 207, 213 (1982)). "To prove the tort of conversion, 'a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant

wrongfully and without authorization assumed control, dominion, or ownership over the property. [Citation.]' " *Id.* (quoting *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998)).

¶ 28    In this case, the circuit court properly found no genuine issue of material fact and properly concluded that after the *Wilson IV* judgment in 2012, the Wilsons had an absolute and unconditional right to their December 27, 2000, judgment proceeds, which included the $20,806.85 in Burkart's possession. The circuit court also properly determined that Burkart had failed to sufficiently assert a claim to the Wilsons' judgment funds, yet he had wrongfully and without authorization maintained control, dominion, or ownership over them. The circuit court thus properly granted summary judgment in the Wilsons' favor on their conversion action and ordered Burkart to tender a certified check in the amount of $20,806.85 plus prejudgment interest in the amount of $19,937.52, made payable to the Wilsons within 30 days.

¶ 29    On appeal, Burkart also argues that the circuit court "ignor[ed] [his] counterclaim demanding attorney fees due under his contract." Burkart argues that he submitted affidavits and other proof that he spent over 400 hours representing the Wilsons and is entitled to a fee exceeding the $20,806.85. The Wilsons counter that the record is devoid of any valid claim made by Burkart.

¶ 30    To support his argument that he asserted a claim to the funds disbursed to him, Burkart cites to his December 4, 2013, answer to the Wilsons' fourth amended complaint, wherein he asserted, as an affirmative defense, that his fee agreement was fully enforceable and that he was entitled to an amount in excess of that disbursed to him. Burkart further argues that if his claim was lacking in some aspect, section 13-207 of the

14

Code of Civil Procedure (735 ILCS 5/13-207 (West 2018)) permits him to make a claim now.

¶ 31    "The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition, pleadings that function to frame the issues for the trial court and circumscribe the relief the court is empowered to order." *In re Custody of Ayala*, 344 Ill. App. 3d 574, 584 (2003). "A party cannot be granted relief in the absence of corresponding pleadings; if a justiciable issue is not presented to the court through proper pleadings, the court cannot *sua sponte* adjudicate an issue." *Id.*

¶ 32    A counterclaim is an independent cause of action in favor of the defendant against the plaintiff, which the defendant is authorized to litigate in the same action and in opposition to the plaintiff's claim. *Carmichael v. Union Pacific R.R. Co.*, 2019 IL 123853, ¶ 26. "As an independent action, a counterclaim 'must stand or fall on its own merits, regardless of the disposition of the complaint.' " *Id.* (quoting *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 589 (1999) and 735 ILCS 5/2-608(c) (West 2010) ("[e]very counterclaim *** shall be complete in itself")). To state a cause of action, a counterclaim must set forth a legally recognized claim as its basis for recovery and must plead facts which bring the claim within the legally recognized cause of action alleged. *Carmichael*, 2019 IL 123853, ¶ 26. "In contrast to an affirmative defense, which merely seeks to defeat the plaintiff's cause of action by a denial or confession and avoidance, a counterclaim seeks affirmative relief." *Id.* "A purported counterclaim that fails to allege an independent, substantive cause of action against the plaintiff and fails to make a specific prayer for relief is not a true counterclaim." *Id.* ¶ 27.

15

¶ 33   In this case, Burkart's affirmative defense failed to allege an independent, substantive cause of action against the Wilsons and failed to make a specific prayer for relief. Thus, his asserted affirmative defense did not constitute a counterclaim. Accordingly, although it was perfectly permissible for Burkart to sue the Wilsons outside of the Attorneys Lien Act to recover for his services (*People v. Philip Morris, Inc.,* 198 Ill. 2d 87, 98 (2001); *Pedersen & Houpt, P.C. v. Main Street Village West, Part 1, LLC*, 2012 IL App (1st) 112971, ¶ 25, as modified (Mar. 12, 2013)), he failed to do so. Burkart also failed to assert any claim for the $20,806.85 disbursed to the Wilsons, the return of which he baselessly asserts he is entitled to on appeal. Moreover, because Burkart failed to assert a counterclaim, section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2018)), which allows an otherwise time-barred counterclaim to remain viable and impervious to a statute of limitations defense (*Cameron General Corp. v. Hafnia Holdings, Inc.*, 289 Ill. App. 3d 495, 506 (1997)), is of no avail to Burkart.

¶ 34   On cross-appeal, the Wilsons argue that the circuit court erred in failing to award consequential damages. The Wilsons argue that Burkart failed to assert any opposition to their motion for judgment on conversion, which documented their damages, and therefore, he has forfeited any opposing view. However, on June 17, 2019, Burkart filed responses in opposition to the Wilsons' post-appeal motions requesting damages, arguing, *inter alia*, against the Wilsons' request for judgment and damages on their conversion action.

¶ 35   Moreover, as noted by Burkart, the Wilsons' attachments to their motion seeking consequential damages involve attorney fees and litigation costs that they incurred

16

through the proceedings. Thus, the Wilsons in effect argue on appeal that the circuit court erred in failing to award attorney fees and litigation costs as consequential damages or pursuant to Supreme Court Rule 137.

¶ 36 Illinois has long adhered to the American rule that each party to litigation bears its own litigation expenses, regardless of who wins. *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 17. The "American rule" provides that a prevailing party may not recover its attorney fees from the losing party unless a statute or contractual provision expressly allows it. *Id.*; see also *Diamond v. General Telephone Co. of Illinois*, 211 Ill. App. 3d 37, 51 (1991) (rule disallowing recovery of attorney fees expended in prosecuting a lawsuit is an exception to the general rule that one who commits a wrongful act is liable for all of the ordinary and natural consequences of his act).

¶ 37 Nevertheless, Illinois Supreme Court Rule 137 provides:

"Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record ***. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of

17

this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 38   "The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). "Rule 137 is penal in nature and, therefore, must be strictly construed." *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47. The party requesting the court to impose sanctions must demonstrate that the opposing litigant made false allegations without reasonable cause. *Id.* "Using an objective standard, the trial court must determine whether a party made a reasonable inquiry into the facts and law supporting their allegations to meet the burden of Rule 137." *Dismuke*, 378 Ill. App. 3d at 217. "A circuit court's decision whether to grant Rule 137 sanctions must be informed, based on valid reasons, and follow logically from the circumstances of the case." *Mohica*, 2013 IL App (1st) 111695, ¶ 47. "It is within the circuit court's discretion whether to grant a Rule 137 request for sanctions, and we will not disturb the court's decision absent an abuse of that discretion." *Id.*

¶ 39   Like the circuit court, we have reviewed the record and have considered the intricacies of the case *sub judice*, and we cannot conclude that Burkart made false allegations without reasonable cause or unsupported allegations of fact or law. Instead,

18

the circuit court's decision to deny the Wilsons' request was informed, based on valid reasons, and followed logically from the circumstances of the case. Accordingly, we cannot conclude that the circuit court's decision denying the Wilsons' request for attorney fees and costs, as consequential damages or as sanctions pursuant to Rule 137, was an abuse of discretion.

¶ 40    The Wilsons further argue on appeal that the circuit court erred in denying their request for punitive damages, considering that Burkart's withholding of their judgment funds was an intentional act.

¶ 41    In reviewing a decision involving punitive damages, we consider (1) whether punitive damages are available for the cause of action; (2) whether the defendant acted fraudulently, maliciously, or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages. *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 355 (2009). In Illinois, punitive damages for conversion are proper where a defendant acts willfully or with such gross negligence to indicate a wanton disregard of others' rights. *Id.*; *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill. App. 3d 461, 474 (2007). Punitive damages serve the purposes of retribution against the wrongdoer and deterrence of similar conduct by the wrongdoer and others in general. *Bell Leasing Brokerage, LLC*, 372 Ill. App. 3d at 474.

¶ 42    We agree with the circuit court's judgment denying the Wilsons' request for punitive damages on the basis that, at this time, the record does not reveal that Burkart acted willfully or with such gross negligence to indicate a wanton disregard of the rights of others. See *Dubey*, 395 Ill. App. 3d at 355-56. The record does not support a

19

conclusion that Burkart acted fraudulently, maliciously, or in a manner that warrants such damages. See *id.* Accordingly, we find that the circuit court, considering the intricacies of the decades-long litigation involved in this case, did not abuse its discretion in declining to assess punitive damages. Moreover, even if we disagreed with the circuit court's decision not to impose punitive damages, we may not substitute our judgment for that of the circuit court, which was in a better position to evaluate the parties' conduct in the case. See *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1149 (2004).

¶ 43    The Wilsons argue that the circuit court failed to properly execute Burkart's *pro se* appeal bond and record the bond in the Office of Deeds. The Wilsons, projecting another 2.5 years of post-judgment proceedings, request that this court, pursuant to its powers under Illinois Supreme Court Rule 366 (eff. Feb. 1, 1994), do so. Burkart counters that he filed a timely notice of appeal and presented an appeal bond which was approved by the circuit court and filed. Burkart argues that nothing in the motion for stay and approval of appeal bond, the appeal bond, or the August 15, 2019, order approving the appeal bond and staying enforcement required the recording of the bond.

¶ 44    Supreme Court Rule 366(a) allows this court to enter any judgment that ought to have been given or made that the case may require. Ill. S. Ct. R. 366(a) (eff. Feb. 1, 1994). However, in this case, in his August 15, 2019, filings, Burkart attested that the appeal bond was secured by an attached Real Property Bond, which stated that it would "be recorded in the Madison County Recorder of Deeds Office and [would] act as a lien and encumbrance on the real estate in the amount of $50,000.00 in favor of" the Wilsons. Although the Wilsons request that pursuant to Rule 366, we "execute the Real Property

Bond to be recorded in the Recorder of Deeds Office," we decline in this instance to exercise our powers pursuant to Rule 366 and suggest that any further application be made to the circuit court. See *Wachowski v. Wachowski*, 86 Ill. App. 2d 145, 150 (1967).

¶ 45                                       III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court.


¶ 47    Affirmed.